PRATT v. BOTHE.

(Circuit Court of Appeals, Sixth Circuit. June 29, 1904.)

No. 1,283.

1. BANKRUPTCY—CLAIMS OF ATTORNEYS—ALLOWANCE.

Bankr. Act July 1, 1898, c. 541, § 60d, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446], provides that if a debtor shall, directly or indirectly, in contemplation of bankruptcy, pay money or transfer property to an attorney, solicitor in equity, or proctor in admiralty, for services to be rendered, the transaction shall be examined by the court on petition of the trustee for creditors, and shall only be valid to the extent of a reasonable amount, to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate. Section 64b, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], provides for an allowance for attorney's services rendered to the bankrupt in assisting him while performing the duties imposed by the act. *Held*, that section 60d was limited to the allowance of reasonable compensation to attorneys for services rendered to the bankrupt prior to the commencement of the bankruptcy proceedings, and did not cover services rendered in resisting the creditor's petition for an adjudication of bankruptcy.

Appeal from the District Court of the United States for the Eastern District of Michigan.

This is an appeal from an order made by the District Court in a proceeding in a bankruptcy case wherein Flora B. Hawley had been adjudicated a bankrupt, which order denied a petition of the appellant praying that the trustee be directed to pay the petitioner, out of the moneys in his hands belonging to the estate of the bankrupt, the balance claimed to be due to him for services as an attorney and counselor at law rendered to the bankrupt, and for disbursements made for her while in such professional service. A schedule stating the items of the account was appended to the petition, consisting of:

Disbursements, made up of items of traveling expenses, telegrams, and the like, from February 13 to April 28, 1903, amounting to.. $ 35 97
Charges for services rendered by Pratt to Hawley, commencing with December 6, 1902, down to and including May 14, 1903, amounting to ........................................... 765 00
Services of George P. Cobb, of counsel for Hawley in the bankruptcy proceedings ........................................... 100 00
And services of Henry Weber and A. R. Miller for making estimate of the value of the buildings on the real estate belonging to Hawley, and their attendance to testify as to the same...... 50 00

Making a total of ........................................ $950 97
Upon which there are credits amounting to..................... 150 00

Leaving a balance due Pratt of........................... $800 97

The petition for an adjudication of bankruptcy was filed January 28, 1903. It appears from the appellant's petition and proofs that the charges were incurred by the bankrupt during a period extending from somewhat less than 2 months before the petition of the creditors was filed until 3½ months thereafter.

The bankrupt had been engaged in business as a merchant at Bay City, Mich., for several years and had become embarrassed and unable to meet her obligations. On the 6th of December, 1902, she consulted the appellant, to advise her as to what course she had best pursue. Further consultations ensued, and on January 12, 1903, she paid the appellant $50 in part payment for his services, and, to secure him for the balance of his services, gave him a mortgage on her stock of merchandise, conditioned for the payment of $200 on the 27th day of January, 1903, and further that she would "well and truly pay or cause to be paid to the second party at maturity.all such other sums in which the said first party may become indebted to said second party for his services hereafter rendered and disbursements and expenses paid, or otherwise, and also for any other indebtedness that may be incurred to other counsel employed by said second party in connection with said first party's affairs." On the same day she executed another mortgage on the same property to one Jeffery, as trustee, to secure all her creditors; the amount of her indebtedness being then estimated at $13,000, but which eventually proved to be as much as $15,500. Apparently both these mortgages were given upon the suggestion of the appellant. The appellant, as he claims, made an agreement with Mrs. Hawley that, in case her creditors should acquiesce in the mortgage to Jeffery, his fee should be the sum of $250, but that, in case they instituted bankruptcy proceedings, he should have such further compensation as might be reasonable for his services and expenses. The creditors did not acquiesce in the mortgage to Jeffery, but on January 28th filed their petition for an adjudication of bankruptcy against Mrs. Hawley, as above stated; the ground thereof being that the giving of the mortgages above mentioned constituted acts of bankruptcy. The appellant and Mr. Cobb, whom he employed to assist him, defended Mrs. Hawley; and a protracted trial before a jury· was had, which resulted in a finding against her. This was followed by an adjudication of bankruptcy on May 9, 1903. On June 8th the appellant filed with the referee his petition for the allowance of the claim now in controversy. It was opposed by the trustee, not, as we infer from the record before us, upon the

ground that the charges were unreasonable of themselves, but upon the ground that the claim was not, in law, allowable. The referee allowed a charge of $37.50 for services in preparing the schedules required to be filed by the bankrupt, and certified the case to the District Judge for his instruction as to the other charges included in the claim of the petitioner. The amount of the claim for services rendered before the filing of the petition by creditors was the sum of $241.75, and the appellant admitted that he had been paid the sum of $150, $90 of which was paid February 2, 1903, after the filing of the creditor's petition. The balance claimed by him on that portion of his whole claim was therefore $91.75. The District Judge, in response to the questions certified by the referee, gave his opinion (1) that the $37.50 for preparing the bankrupt's schedules was properly allowed; (2) that the petition should, in respect of all other charges of the appellant, be disallowed; (3) but that the balance of $91.75 for services rendered before the filing of the petition of creditors might be allowed as an ordinary debt of the bankrupt upon the surrender of the $150, which was, as the court held, an unlawful preference. An order to this effect having been entered, the petitioner has appealed. He has also, out of caution, brought the case up by petition for revision. As there is no controversy in respect to any question of fact upon the case as presented to us, it matters little which method of procedure is recognized. We incline to the view, however, that the case is properly before us on the appeal (Cunningham v. German Ins. Bank, 103 Fed. 932, 43 C. C. A. 377), and will consider and determine it upon that footing.

Frank S. Pratt, in pro. per.
Graves, Hatch, Millis & Goodenough, for appellant.
Lee E. Joslyn, for appellee.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge, having made the preceding statement of the case, delivered the opinion of the court.

The contention of the appellant is that his whole claim, to the extent that it has not been paid, should be allowed as a charge upon the fund in the hands of the trustee, and should be paid before distribution to general creditors. He founds his claim upon the provision of section 60d of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446], which reads as follows:

"If a debtor shall directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be examined by the court on petition of the trustee or any creditors and shall only be valid to the extent of a reasonable amount to be determined by the court and the excess may be recovered by the trustee for the benefit of the estate."

The construction which the appellant thinks should be imposed upon this paragraph is that it validates any such payment or transfer for services to be rendered to the debtor, whether to be rendered before or after a petition in bankruptcy is filed against him, and whether or not he is adjudged a bankrupt, subject only to the determination of the court as to whether the amount paid or transferred is reasonable. For the trustee, on the other hand, it is contended that it has relation only to services which may be rendered to the debtor prior to the institution of bankruptcy proceedings against the debtor, upon which he shall have been adjudged a bankrupt. It must be admitted that the language of this provision of the act is obscure. And the

bankruptcy courts have found difficulty in settling its meaning. But the direct question of its proper interpretation has not been presented in more than a very few cases. Perhaps it was most distinctly presented and considered in the case In re Kross (D. C.) 96 Fed. 816, which was followed by Judge Swan in the case before us. Judge Brown, then District Judge of the Southern District of New York, there held that this provision should be construed in connection with section 64b, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3447], and should be limited thereby, in respect to the services rendered to the bankrupt after the filing of the petition against him, to such services as are contemplated by section 64b; that is to say, services rendered to the bankrupt in assisting him while performing the duties imposed upon him by the act. And upon this construction it was held that it was immaterial whether they had been contracted and paid for before the bankruptcy, or the compensation thereafter determined by the court, without any contract by the debtor before the petition was filed against him. In either case it would be a preferred claim, to be ascertained and fixed by the court. This would seem a plausible conclusion, were it not for the language of the paragraph, which includes services rendered not only by an attorney, but those rendered by a "solicitor in equity or a proctor in admiralty." This generalization seems to indicate that the services contemplated were such as might be required in general litigation or in the course of the debtor's business, and one cannot help greatly doubting whether Congress had in mind the purpose to include those special services which an attorney would render to the bankrupt while in the discharge of his duties, payment for which was provided by another section of the act. It would rather seem that Congress, engaged, as many signs indicate, in guarding the assets of those in contemplation of bankruptcy, to the end that they might be brought without unnecessary expenditure to the hands of the trustee for distribution to creditors, while it would not deny to the debtor the right to employ and pay for legal assistance in his affairs during that critical period, yet proposed a restraint upon that privilege by requiring that such payment should be reasonable in amount—in short, proposed to apply to the incipient stage of bankruptcy the provident economy which it sought to apply to the administration of the bankrupt estate. It may have been thought that there was the same reason for such restraint at that stage of affairs as subsequently. And it is to be observed that the transaction would not become the subject of revision unless bankruptcy ensued. It put attorneys, solicitors, and proctors in no worse position than it did some other classes of those having business with the debtor.

The bankruptcy act makes a final and sharply determined line in respect of the power of the bankrupt over his estate and the distribution of it as of the date of the filing of the petition against him. From that time his assets are in gremio legis, and he cannot, unless he compounds with his creditors, bind his assets. He may, of course, make new contracts and incur new obligations, but they are not chargeable to the funds which have become vested in the trustee until they have subserved the purpose of the bankruptcy proceedings,

when, if anything remains, he reacquires it. It would be wholly inconsistent with the scheme of the act that a debtor in contemplation of bankruptcy should be permitted to make an arrangement whereby he should have power, after his assets shall have gone into the hands of the trustee, to alter their disposition by appropriating them to the payment for services thereafter rendered to him, or, indeed, to satisfy the obligations of any executory contract. With respect to services rendered to the bankrupt in the present case after the creditor's petition was filed, it is to be observed that the compensation therefor was not due and owing at the date of the filing of the creditor's petition, and so was not a provable claim. It would be anomalous that the debtor, by preconcert with his attorney, could defeat that provision by an agreement for a benefit to accrue to the bankrupt after the proceedings should be inaugurated, and make the compensation therefor a privileged claim. By section 64b, the law provides for compensation to an attorney who assists the bankrupt in performing the duties imposed upon him. But this is done for the purpose of facilitating the proceedings, and for the benefit of the estate. It is not done in recognition of any contract obligation of the bankrupt. Many cases have been cited to us—mostly cases arising upon the last preceding act—in which the bankruptcy courts have given some countenance to the appellant's contention that the debtor may employ counsel to resist the petition of his creditors for an order adjudging him a bankrupt, and charge his assets with the payment thereof, and in one case that doctrine seems to have been quite pointedly held. In re Comstock, 6 Fed. Cas. 239, No. 3,074. The idea which pervades the allowance of such a charge seems to have been grounded upon a disposition to be merciful to the debtor, who, it is said, has given up all his property, and is without other means of repelling an unjust prosecution. But it is by no means a new thing—indeed, it is a situation constantly recurring—where a man, whether by his fault or his misfortune, is without means to make full defense of his property rights. It is unfortunate often, but it has never been thought that property belonging to others, or which might be adjudged to them, should be drawn upon to enable the man to make defense. Many cases are cited which more or less oppugn the doctrine of such decisions as In re Comstock, supra. It is not practicable within any reasonable limits to review and compare the cases upon this subject, and, so far as we are not concluded by positive authority, we shall deal with the questions involved on fundamental reasons. We are of opinion that section 60d relates to services to be rendered while the debtor is "in contemplation of bankruptcy," and not to services to be rendered after bankruptcy proceedings are commenced. The reasonableness of the amount paid or transferred for such services is to be determined by the court. This view would lead to the conclusion that the court, if the trustee or any creditor should require it, should have reviewed the transaction, and exercised its judgment upon the question as to what amount would be a reasonable sum to be allowed. No such request was made in this case, and, as matters stood, the question was to what extent the charges for services, and the expenses rendered in connection with them, had

been paid. If any balance was found in favor of the petitioner, that sum should have been allowed him; otherwise the petition should have been disallowed. In the case of Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, it was held, in response to questions certified by this court, that compensation might be made to attorneys for preparing an assignment for the benefit of creditors which the debtor had made prior to the proceedings in bankruptcy, but that it would not be provable as a preferential claim. It was also held that charges for counseling the assignee in the discharge of his duties under the assignment might be allowed in so far as they were beneficial to the estate. But the right to the claim of preference was founded upon the right of the assignee to be reimbursed for expenses reasonably incurred by him on account of the assignment and the protection of the property. And this claim of the assignee inured to the attorney to whom it would ultimately go. But there are no such facts in the present record. It is not shown that any services were rendered to the assignee, or that he became obligated therefor. All the services were rendered to the debtor, and were charged to him. The bulk of the charges making up the claim of the appellant was for services rendered and expenses incurred in resisting the creditor's petition for an adjudication of bankruptcy. The act does not expressly provide for payment for such services out of the assets, and there is no ground which we can discover for thinking an implication to that effect should be recognized. But we are relieved from discussion of this subject by the opinion of the Supreme Court in Randolph v. Scruggs, supra, wherein it was certified that a claim for such a service was not allowable. Expenses incurred in the same service would stand upon the same footing, and are subject to the same disposition. The District Court recognized as valid the item of $37.50 for making out the bankrupt's schedules, and allowed it. We are therefore not concerned with it on this appeal. Since the argument of this case the appellant has sent in a reference to a recent decision of the Supreme Court of Pennsylvania (Furth v. Stahl, 205 Pa. 439, 55 Atl. 29), in which that court considered the provision of the bankrupt act upon which the appellant here relies, and reached the conclusion that an agreement of this kind was valid thereunder. If, as we infer, the services for which the claim was there made were rendered before the proceedings in bankruptcy were commenced, the opinion of the court is in accord with our own conclusions. If we are wrong in our inference in respect of the fact, we could not assent to the result there reached. Upon the construction which we think should be given to section 60d, there having been no petition of the trustee or any creditor that the court should inquire into the reasonableness of the amount of the compensation agreed to be paid by the debtor, we think the claim of the petitioner for charges incurred before the commencement of the bankruptcy proceedings should have been allowed at the sum of $241.75, less the sum of $150 admitted to have been paid, which would leave a balance of $91.75. This, of course, does not include the $37.50 allowed by the judge under section 64b. As the rights of the parties are governed by the spe-

cial provision of the statute relating to the subject, no question of preference by reason of the payments arises.

The order of the court below from which this appeal was taken must be reversed, with directions to enter an order in conformity with this opinion. As each party succeeds in part, the costs of the appeal will be divided between them. The petition for review will be dismissed at the cost of the petitioner.