In re STOLP et al.

(District Court, E. D. Wisconsin.   September 27, 1912.)

1. BANKRUPTCY (§ 170*)—CLAIMS—SERVICES OF ATTORNEY—PAYMENT—RE-
    EXAMINATION OF TRANSACTION.

    Bankr. Act July 1, 1898, c. 541, § 60d, 30 Stat. 562 (U. S. Comp. St.
    1901, p. 3445), provides that if a debtor, directly or indirectly, in con-
    templation of the filing of a petition by or against him, shall pay money
    or transfer property to an attorney and counselor at law for services to
    be rendered, the transaction shall be re-examined by the court on peti-
    tion of the trustee or any creditor, and shall only be held valid to the
    extent of a reasonable amount, to be determined by the court, and the
    excess may be recovered by the trustee for the benefit of the estate.
    Held, that where insolvents, in contemplation of bankruptcy, executed
    a note secured by a chattel mortgage to their attorney to secure payment
    for services in arranging a composition with creditors, if possible, in
    order to prevent bankruptcy proceedings, and the trustee found that the
    transaction was an ordinary preference, and not one involving a pay-
    ment for services to be rendered, the transaction was not within such
    section, and the referee was without jurisdiction to review the same
    thereunder, or to make any order, except one of dismissal without prej-
    udice to the trustee's right to proceed with remedies given by the act
    relative to preferences or fraudulent conveyances.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271;
    Dec. Dig. § 170.*]

2. BANKRUPTCY (§ 170*)—PREFERENCE TO ATTORNEY—RE-EXAMINATION—STAT-
    UTES.

    Bankr. Act July 1, 1898, c. 541, § 60d, 30 Stat. 562 (U. S. Comp. St.
    1901, p. 3445), provides that if a debtor, in contemplation of bankruptcy,
    shall pay money or transfer property to an attorney for services to be
    rendered, the transaction shall be re-examined by the court on petition
    of the trustee or any creditor, and shall be held valid only to the extent
    of a reasonable amount. Held, that such section refers to services to be
    rendered after the time of the payment or transfer objected to, within
    and germane to the general aims of the bankruptcy act, and actually
    rendered, if at all, before the institution of bankruptcy proceedings, and
    that the payment or transfer reviewable under such section cannot apply
    to services rendered under section 64b, providing for a preferential pay-
    ment of the cost of administration, including one reasonable attorney's
    fee for services actually rendered to the petitioning creditors and to the
    bankrupt in involuntary proceedings.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271;
    Dec. Dig. § 170.*]

3. BANKRUPTCY (§ 170*)—ATTORNEY FOR BANKRUPT—SERVICES.

    Bankr. Act July 1, 1898, c. 541, § 64b, 30 Stat. 563 (U. S. Comp. St.
    1901, p. 3447), providing for an allowance to the bankrupt's attorney in
    involuntary proceedings for services rendered, relates only to services
    rendered after the bankruptcy proceedings are instituted to aid the bank-
    rupt in performing his duties required by such act, and not to services
    rendered prior to bankruptcy in order to obtain a composition of creditors.

    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271;
    Dec. Dig. § 170.*]

In Bankruptcy.   In the matter of bankruptcy proceedings of Er-
nest Stolp and another.   Petition by Leo Torbe to review proceed-
ings before a referee for re-examination of a transaction with ref-
erence to an advance payment of fees by the bankrupts to peti-
tioner as their attorney.   Reversed, with directions.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The bankrupts were copartners. An involuntary petition was filed against them on June 21, 1911, which was pending until July 13, 1911, when they filed a voluntary petition, upon which an adjudication followed. It appears that on June 9th, or 12 days before the filing of the involuntary petition, one of the bankrupts executed and delivered to the petitioner, Torbe, an attorney, a promissory note for $1,000, secured by a mortgage upon real estate owned by said bankrupt individually. The trustee filed a petition, representing that said mortgage was executed to said Torbe, and that the transaction was valid to the extent only of a reasonable amount which might become due to said attorney for services to be rendered, and praying for a re-examination of the transaction pursuant to section 60d of the Bankruptcy Act.

Some time in May, 1911, the bankrupts, being pressed by their creditors, sought the advice of Torbe, who immediately endeavored to effect a compromise or composition. His services consisted of conferences and consultations with the bankrupts and their creditors. Many of the creditors were agreeable to the composition, but it became apparent, at or about the time of the execution of the mortgage, that the effort to induce all creditors to accept would be fruitless. During this time no money had been paid to said attorney, excepting an amount to defray the expenses of a trip to Michigan. Such being the situation, and at the time when the necessity of resorting to bankruptcy proceedings had apparently been definitely determined by the bankrupts and the attorney, the note and mortgage above specified were given. The attorney, when asked respecting the arrangement under which such mortgage was given to him, stated that it was "to secure such fees as I had already earned and would earn, and also to secure the payment of counsel fees in the matter." He further stated, in answer to the question whether it was given in contemplation of bankruptcy, that it was given in contemplation "that there would not be any bankruptcy," and, further, that the bankrupts contemplated such proceedings as a possibility "to procure a better settlement of their affairs." Said attorney also produced before the referee a statement of his account covering services rendered from May 1, 1910, to June 17, 1911, which, including a claim on behalf of associate counsel, aggregates $1,475.

The referee held the mortgage void as preferential, but that said attorney had rendered services to the bankrupts *in the bankruptcy proceeding since the filing of the petition*, the reasonable value of which latter is $100, and adjudged that the mortgage was valid to secure such sum. This ruling is brought here for review.

Leo Torbe, of Milwaukee, Wis., in pro. per.
McCabe & Dahlman, of Milwaukee, Wis., for trustee.

GEIGER, District Judge (after stating the facts as above). Section 60d of the Bankruptcy Act is as follows:

"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

Section 64b of the Bankruptcy Act, so far as pertinent to the questions presented, is as follows:

"The debts to have priority, except as herein provided, and to be paid in full out of the bankrupt estates, and the order of payment shall be: * * * (3) The cost of administration, including * * * one reasonable attorney's fee for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases as the court may allow."

The record discloses that the trustee by his petition sought re-examination of a transaction pursuant to section 60d. The hearing proceeded upon such petition, before the referee, by consent. The mortgage transaction was held to be void, because preferential, but sustained as valid security for the payment of $100, the reasonable value of services rendered to the bankrupt *after* the institution of the bankruptcy proceedings; and the trustee was ordered to pay the same to Torbe, and the latter was directed to give to the trustee a satisfaction and discharge of the mortgage.

The preliminary question arises whether the referee could, under section 60d, make any adjudication other than one relating to the reasonableness of the amount for which the debtor sought to make payment; that is, assuming that under section 60d the services are such as are performed prior to bankruptcy, can the court under such section, when it appears that the payment was *not* for *services to be rendered,* but for some other account, proceed to adjudge the transaction void or voidable as preferential or fraudulent? I think this question must be answered in the negative. Whatever doubts have arisen as to the scope of the section, the Supreme Court, in considering whether it contains any special grant of jurisdiction, has declared that it is designed to provide a special and summary remedy to meet the precise situation therein referred to, viz., the re-examination of a payment or transfer to an attorney for services to be rendered.

"Section 60d added a feature to the bankruptcy act not found in former acts, regulating practice and procedure in bankruptcy, therefore adjudications upon other provisions of the bankruptcy act, or concerning the judiciary act giving jurisdiction to the courts of the United States have no binding effect in the construction of this section. This is not a case of preference, where part of the estate is transferred to a creditor, so as to give to him more of the estate than to others of the same class under section 60 of the bankruptcy act, nor is it a case of fraudulent conveyance under section 67. It is a transfer in consideration of future services, to be reduced if found unreasonable in amount. * * * To undertake to bring within this definition of a preference, requiring a plenary action for its recovery, the protection given a bankrupt's estate, because of a transfer of property or money to an attorney or counselor for services to be rendered in contemplation of filing a petition in bankruptcy, is to add to the clearly defined preferences contemplated by the act, and is to include entirely different transactions, not embraced in the statutory definition of a preference as Congress has defined that term. * * * These last-named sections have reference to suits to recover preferences or fraudulent conveyances. No attempt has been made to change the exercise of jurisdiction under section 60d. The transfer to counsel may be wholly sustained; it is entirely valid to the extent that it is reasonable. It is neither a preference nor a fraudulent conveyance, as defined by sections 60b or 67e of the act. It is to be noted that in this case, as the statement of the certificate shows, the District Court rendered no judgment against the defendant for a recovery of the excess, but directed the trustee to bring an action therefor. It simply assumed and exercised the jurisdiction conferred by section 60d to determine the amount of the excessive transfer for a counsel fee provided in view of filing a petition in bankruptcy. It may be that this order, though binding upon the parties, cannot be made finally effectual until a judgment is rendered in a jurisdiction where it can be executed." Wood v. Henderson, 210 U. S. 251, 253, 256, 28 Sup. Ct. 623, 52 L. Ed. 1046.

See, also, Pratt v. Bothe, 130 Fed. 670, 65 C. C. A. 48; Haffenberg v. Title & Trust Co., 27 Am. Bankr. Rep. 708, 192 Fed. 874, 113 C. C. A. 198.

[1] I am of opinion, therefore, that when the referee concluded that the transaction was an ordinary preference, and not one involving a payment for services "to be rendered" (except as to services rendered after the bankruptcy, and which, for other reasons hereafter given, are not within the terms of section 60d), in other words, when he found that the transaction was not of the character claimed in the trustee's petition, he was powerless to make any order except one of dismissal—although without prejudice to the right of the trustee to proceed with remedies given by the act relative to preferences or fraudulent conveyances, should the transaction be deemed to be the one or the other.

Upon the merits of the matter the following questions arise:

1. Whether the services "to be rendered," as provided by section 60d, are such as are expected to be performed by the attorney in the future, or subsequently to the time when the payment or transfer is made; or whether such payment may cover services which the attorney has rendered or is rendering, subject only to the requirement that the debtor shall be in a situation of contemplating bankruptcy.

2. To what kind of service does section 60d refer? Does it refer to any professional services rendered by an attorney, counselor, or proctor, or must they be such as pertain to the contemplated bankruptcy, or to some purpose in harmony with the interests of the general creditors of the bankrupt?

3. Whatever the kind or character of the service, can the period of rendition thereof extend beyond the commencement of the bankruptcy proceedings—that is, can the payment or transfer be made available for or applicable to services rendered after the institution of bankruptcy proceedings?

4. The latter suggests or includes the question whether the "services to be rendered," for which payment may have been made as indicated in section 60d, may be in whole or in part the same services referred to in section 64b, and for which an allowance might otherwise be made as therein provided.

[2] The scope and meaning of these two sections can be determined by ascertaining, if possible, what situations they were designed to meet, what possible evil to remedy, or what right to recognize or protect. The language of 60d, on first reading, appears to place the legal advisers of failing debtors in a class by themselves, to be dealt with according to the prescribed provisions, no matter what the character of the service or when rendered; but, as indicated in Wood v. Henderson, supra, the section was intended to treat with a situation which involved neither a preference nor a fraudulent conveyance. If a payment or transfer for services to be rendered means, as stated (see 210 U. S. 251, 259, 263, 28 Sup. Ct. 624, 627, 629, 52 L. Ed. 1046), "in consideration of future services," "in expectation of proceedings in bankruptcy," or "prepayment," then the date of the transaction

must ordinarily be taken as the commencement of the period during which the contemplated services were "to be rendered"; and, having reference to the future, the transaction could not be treated as dealing with the ordinary relation of debtor and creditor, in which the latter received payment for a past or present consideration; nor, in view of the relation of attorney and client which has sanctioned compensating attorneys in advance, could it be deemed fraudulent or in fraud of creditors. The section is declared to be sui generis, and—

"recognizes the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure. It recognizes the right of a debtor to have the aid and advice of counsel, and in contemplation of bankruptcy proceedings, which shall strip him of his property, to make provision for reasonable compensation to his counsel, and in view of the circumstances the act makes provision that the court administering the estate may, if the trustee or any creditor question the transaction, re-examine it with a view to a determination of its reasonableness." Wood v. Henderson, supra, 210 U. S. 253, 28 Sup. Ct. 624, 52 L. Ed. 1046.

It is difficult to see why Congress should have intended by these sections to provide comprehensive remedies to meet all situations which might arise between a debtor and his attorneys, both before and during bankruptcy. There is no reason why an attorney, being a creditor with a matured claim, or a creditor, having a claim for past services which the bankrupt has paid, should not at the moment of bankruptcy stand with other creditors; but, when the failing debtor secures counsel and favors him with prepayment for contemplated service, the transaction, being neither preferential nor fraudulent, should, in fairness to creditors, be subject to review by the court. It seems to me that the section is designed to reach the situation which arises out of the desire of both the debtor and his attorney to avoid the necessity of the latter's being charged with having received a preference, or of becoming a general creditor of the estate. It should not be construed to cover other transactions between a debtor and his attorney not fairly within this design, nor within the term of the statute. In other words, it refers to advance payments.

In meeting the second question, the language of section 60d, referring to an attorney, counselor, solicitor in equity, or a proctor in admiralty, presents considerable difficulty. Are the services to be rendered such as pertain to the contemplated bankruptcy, or may they be general professional services rendered by an adviser in any of the several capacities specified? On the one hand, it is argued that, being unrestricted, the language must be given a construction which will cover all situations fairly comprehended within its terms, and it therefore includes all instances where advance payments are made to professional legal advisers, no matter what the character or object of their service may be. On the other, the view is taken that Congress could not reasonably have intended to make a debtor's legal advisers the object of favorable or restrictive legislation, except to the extent that the contemplated service is germane to the general purpose of the bankruptcy law, namely, the subjection of the assets of the debtor to administration and distribution for his creditors.

In Pratt v. Bothe, 130 Fed. 670, 65 C. C. A. 48, it is intimated that the general language referring to solicitors and proctors "seems to indicate that the services contemplated were such as might be required in general litigation, or in the course of the debtor's business." This was said in considering whether section 60d referred to services rendered before or after the bankruptcy. On the other hand, the question as to the character of the services contemplated was directly involved in Re Habegger, 139 Fed. 623, 71 C. C. A. 607, 3 Ann. Cas. 276, and it was determined that they were such as were to be rendered in aid of the purpose sought to be accomplished by the Bankruptcy Act, to conserve and benefit the estate of the bankrupt, and therefore inure to the benefit of the creditors; and accordingly a payment or transfer from a failing debtor for services to be rendered in endeavoring to get a composition with creditors, and in defending the failing debtor in a criminal prosecution, was not within the terms of this section. In my judgment the purpose of the section was to meet situations most frequently arising, or likely to arise, and such situations are those arising between a failing debtor and his attorney in respect of services relative to his failing condition or the contemplated bankruptcy. While a failing debtor may have employed, or may wish to employ, attorneys for various purposes, it is not probable that the situations in which advance payments are made, or are likely to be made, to attorneys for an account other than his involved business affairs or contemplated bankruptcy, occur with sufficient frequency to have been made the object of special legislation. And if this is true, then it is fair to construe the section in question as excluding such other situations. Such section in question provides a new remedy, and, as above indicated, was intended to reach situations which under former bankruptcy acts, and under the present acts, could not be reached. It was desired to enable a debtor to pay his attorney in advance, to the end that he might procure the service, and not require such attorney to take the hazard of payment with general creditors. But a review of the transaction is provided. This appears to be the sounder construction, and should be accepted, rather than to presume an intention on the part of Congress to make provision for all cases where a failing debtor may pay his counsel in advance. It is true that this greatly narrows the language of the act, and, it may be said, eliminates a portion of it. It is also true that it may enable payments to counsel whose services are not to be rendered in furthering the objects of the act, and these will therefore be permitted to stand, unless possibly they can be attacked as fraudulent. But I think the act should have a construction which will effectuate an intention to deal with situations constantly arising, and which, under the former bankruptcy law, had to be met, either by making the debtor's counsel stand as a general creditor, or by yielding him a priority not awarded by the Bankruptcy Act, or by allowing possible excessive payments in advance to stand.

I am aware that this restricted view will also affect the application of the remedy provided in section 60d strictly to such cases as appear to be payments for services to be rendered, when such services

are admitted or adjudicated to be of the character specified, namely, services germane to the purposes of the Bankruptcy Act; and when it appears that the service to be rendered was not of such a character, the right to review cannot be exercised, but the transaction must either stand or be attacked under some other provision of the Bankruptcy Act.

In answering the third and fourth questions it must follow that section 60d refers solely to services of the character above described, which were to be and were in fact rendered *prior* to the bankruptcy. Under former bankruptcy acts the question arose repeatedly whether counsel rendering service prior to bankruptcy, and who had not been paid, should be treated as a general or a preferred creditor; and the uncertainty of receiving adequate compensation as a general creditor would naturally stimulate the practice of paying in advance. Therefore, it being possible to deal with attorneys who are general creditors, or with such as had in fact been paid for past services, in the same manner as other creditors had to be dealt with, section 60d not only embodies a design and remedy to reach the cases where advance payments have been made, but, to be effective, there must be a limit of time within which the contemplated future services are to be rendered. Such limit, as indicated in Pratt v. Bothe, supra, is the date of filing the petition in bankruptcy. Judge Severens there said:

"The Bankruptcy Act makes a final and sharply defined line in respect of the power of the bankrupt over his estate and the distribution of it as of the date of the filing of the petition against him. From that time his assets are in gremio legis, and he cannot, unless he compounds with his creditors, bind his assets. He may, of course, make new contracts, and incur new obligations; but they are not chargeable to the funds which have become vested in the trustee until they have subserved the purpose of the bankruptcy proceedings, when, if anything remains, he reacquires it. It would be wholly inconsistent with the scheme of the act that a debtor in contemplation of bankruptcy should be permitted to make an arrangement whereby he should have power, after his assets shall have gone into the hands of the trustee, to alter their disposition by appropriating them to the payment for services thereafter rendered to him, or, indeed, to satisfy the obligations of any executory contract. With respect to services rendered to the bankrupt in the present case after the creditor's petition was filed, it is to be observed that the compensation therefor was not due and owing at the time of the filing of the creditor's petition, and so was not a provable claim. It would be anomalous that the debtor, by preconcert with his attorney, could defeat that provision by an agreement for a benefit to accrue to the bankrupt after the proceedings should be inaugurated, and make the compensation therefor a privileged claim. By section 64b the law provides for compensation to an attorney who assists the bankrupt in performing the duties imposed upon him. But this is done for the purpose of facilitating the proceedings, and for the benefit of the estate. It is not done in recognition of any contract obligation of the bankrupt."

[3] Thus, if section 60d is construed as referring to services rendered prior to, and section 64b to services rendered after, the institution of the bankruptcy proceedings, remedies are provided for meeting distinct situations. The cases herein cited, as well as others (see, for example, In re Kross [D. C.] 96 Fed. 816; In re Cummins [D. C.] 196 Fed. 224), disclose a diversity of opinion upon

nearly every phase of these two sections, which, at least as to the character of services covered by section 60d, will probably exist until adjudication by the Supreme Court, or until amendment by Congress. However, if the construction herein will enable the accomplishment of a definite purpose through each section consistent with the general purpose of the Bankruptcy Act, it should prevail, rather than a broader construction covering situations which rarely occur, or for meeting which other provisions of the act provide ample remedies.

The general conclusions are that section 60d refers to the services to be rendered after the time of the payment or transfer; that such services must be germane to the general aims of the Bankruptcy Act; that they must be actually rendered, if at all, before the institution of bankruptcy proceedings, and that the payment or transfer specified in said section cannot apply to services rendered as specified in section 64b; that section 64b refers to services rendered after the bankruptcy proceedings are instituted, to aid the bankrupt in performing his duties under the act.

In the matter now here for review, the note and mortgage having been given 12 days before bankruptcy ensued, but when the proceedings were contemplated, and it appearing that services were to be rendered and were in fact rendered by the attorney to carry out the contemplated purpose, the referee should have ascertained the reasonable value of the service so rendered, and adjudged the note and mortgage valid as security for the payment thereof; but the value of any service rendered after bankruptcy was not the subject of inquiry upon this proceeding, being determinable only under section 64b.

The order of the referee is reversed, with directions to proceed in accordance with the foregoing.