the act of 1923, the Legislature had in mind the decisions of the federal courts holding that, in the event of bankruptcy of the insured, the cash surrender value of policies which gave the insured the right to change the beneficiary would not be exempt. All three of these acts provided for an exemption, "notwithstanding the right to change the beneficiary has been reserved or is permitted by the insurer," or used substantially similar language. It may be assumed that the purpose of these acts was to broaden, rather than to restrict, the existing exemptions. Their tenor and phraseology leaves no doubt of that. There would have been no purpose in enacting these statutes, had the intention of the Legislature been to make them to apply only to the proceeds of policies arising after the death of the insured. This fund was already exempted by the act of 1868. The absence of protection as to the cash surrender value was no doubt considered by the Legislature to be a defect in the scheme of exemption, which called for a remedy, and the statutes referred to were clearly enacted to change the rule established by the federal courts.

In the case of Irving Bank v. Alexander, 280 Pa. 466, 124 A. 634, 34 A. L. R. 834, the Supreme Court of Pennsylvania called attention to the exemption laws of the state and carefully reviewed the legislation above referred to, but the question of whether the cash surrender value of policies taken out by an insolvent insured was an asset of the insured, which could be subjected to the payment of his debts prior to his death, was not involved in that case, and the court did not decide it.

We conclude that the effect of the acts of 1919 and 1923 was to exempt from the claims of creditors the cash surrender value of policies of the character referred to in those acts. There is nothing in the language of the statutes which would lead to a different conclusion. The argument for the trustee, based on the use of the words "the net amount payable," is not convincing. As the referee stated in his opinion, these words "might be held to mean either the net amount payable after the death of the insured, or the net amount payable upon the surrender of the policies." They are quite as applicable to the one as to the other, and simply mean that the fund exempted is that which arises after deduction of loans or other amounts properly due to the insurer.

[3] As to the second contention of the trustee, that the exemption created by the acts is an exemption for the benefit of the bankrupt's wife, and not for the bankrupt, the language of the later acts is "shall be exempt from all claims of creditors." The words of the act of 1868 were "shall be vested in such wife * * * full and clear from all claims of the creditors." The words of the later acts extend the exemption to the insured himself, as well as to his family. The change is significant, and the further inference may be drawn that the subject-matter of the acts of 1919 and 1923 was the cash surrender value, since, in the ordinary policy, the insured and not the beneficiary is the one who can collect this.

There are two petitions here. In view of the holding that the cash surrender value of the policies in question is exempt to the bankrupt, the order of the referee dismissing the petition of Howard A. Lang must be reversed, and an order may be made directing the trustee to deliver the policies in question to the bankrupt. As to Nellie Lang, the order may be affirmed.

---

### In re LANG.

District Court, E. D. Pennsylvania. May 4, 1927.

### No. 9577.

**Bankruptcy ⬅170—Bankrupt's payment to his attorney for services to be rendered, made in contemplation of bankruptcy, held subject to re-examination (Bankruptcy Act, §§ 60, 64b [3], being Comp. St. §§ 9644, 9648).**

Where payment by bankrupt three weeks prior to filing of involuntary petition was made to his attorney for services to be rendered in connection with contemplated assignment for benefit of creditors, justifying finding that it was made in contemplation of bankruptcy, held that under Bankruptcy Act, § 60 (Comp. St. § 9644), bankruptcy trustee was entitled to a re-examination of the transaction, on which re-examination referee should consider the fair value of services rendered by attorney relevant to the contemplated bankruptcy, including advice in connection with bankrupt's financial difficulties and preparation of assignment for benefit of creditors, but not services directly arising out of bankruptcy, provision for which may be made under section 64b (3), being Comp. St. § 9648.

In Bankruptcy. In the matter of Howard A. Lang, bankrupt. On review of order of referee requiring bankrupt's attorney to repay to bankruptcy trustee a sum received from bankrupt prior to bankruptcy for services to be rendered in contemplation of bankruptcy. Order affirmed, as modified.

See, also, 20 F.(2d) 236.

George J. Edwards, Jr., of Philadelphia, Pa., for trustee.

D. Arthur Magaziner, of Philadelphia, Pa., for claimant.

KIRKPATRICK, District Judge. This was a petition by the trustee for the re-examination of a payment of $1,000 made by the bankrupt to his attorney three weeks prior to the filing of the petition against him. The following quotation from the opinion of the referee states the material facts:

"Mr. Magaziner was counsel for the bankrupt for some time prior to the transaction which is the subject of this proceeding. Prior to July 1, 1925, the financial affairs of the bankrupt had been the subject of consideration between himself and his counsel. At that time he knew that he was insolvent, and it was determined that he should make an assignment for the benefit of creditors. He believed his liabilities to be in the neighborhood of $175,000, and in the event of his one large asset, namely Triplok stock, being worth what he supposed it to be worth, his assets would have been $125,000 or $130,000, so that even then he would have been insolvent. On July 1, 1925, Mr. Magaziner prepared an assignment for the benefit of creditors, which was executed by Mr. Lang, the bankrupt. On the same day, Mr. Magaziner acknowledged receipt from the bankrupt of the sum of $1,000, as follows: 'Received July 1, 1925, of Howard A. Lang, one thousand dollars as a retainer for professional services to be rendered in re financial difficulties.' "

Upon these facts, the referee based the following finding of fact:

"I therefore come to the conclusion, and so find, that Howard A. Lang made the payment of $1,000 to D. Arthur Magaziner on July 1, 1925, in contemplation of the filing of a petition in bankruptcy against him, and that therefore the transaction is subject to re-examination in this proceeding."

The referee further held that, in view of the foregoing finding of fact, the testimony as to the value of services, which was taken before him, was all irrelevant, for the reason that the payment was not for services directly arising out of the bankruptcy proceedings. The referee made the following order:

" * * * It is ordered that the said D. Arthur Magaziner shall repay to the trustee in bankruptcy of the estate of Howard A. Lang the said sum of $1,000, less such reasonable amount as shall hereafter be determined to be the attorney's fee to which the said D. Arthur Magaziner is entitled by virtue of services rendered by him in accordance with provisions of section 64b (3) of the Bankruptcy Act."

The referee's finding that the payment was made in contemplation of the filing of a petition against the bankrupt is clearly correct, but it does not follow from this fact that it may be recovered by the trustee in its entirety, nor that the attorney will be allowed to retain only such part of it as represents services directly connected with the bankruptcy proceedings, under the provisions of section 64b (3), being Comp. St. § 9648. The facts of this case are almost exactly like those in Furth v. Stahl, 205 Pa. 439, 55 A. 29. In that case, the Supreme Court of Pennsylvania said:

"It was urged before the auditor that the services were not of the kind mentioned in section 64 of the act, and therefore could not be allowed. But the two sections have no necessary connection. * * * Section 64 defines the debts which are to have priority and be paid in full by virtue of the statute itself, without regard to any act or agreement of the parties. The services of an attorney included in this class are those 'actually rendered * * * while performing the duties herein prescribed.' The services referred to in section 60 [U. S. Comp. St. § 9644], on the contrary, are those 'to be rendered,' which are paid for in advance 'in contemplation of the filing of a petition by or against' the bankrupt. Such fees are not determined by the statute and allowed in full out of the bankrupt estate, as the other class are, but depend both as to payment and amount on the acts of the parties, and what the statute does is to recognize the validity of their payment, but subject the reasonableness of the amount to the supervision of the court. The services of the plaintiff belong to this class. They were none the less rendered in contemplation of the filing of a petition in bankruptcy, because directed primarily and principally to the prevention of such petition. A man is usually very much in contemplation of a result which he employs counsel to avoid."

We agree with the reasoning and conclusion of the case just cited. The rule contended for by the trustee would make extremely difficult the position of a person whose business affairs become involved, and might conceivably, in some cases, result in depriving him altogether of the advice and assistance of counsel. There will almost always be a period in the history of any insolvent during which he realizes his difficulties and faces the possibility, or even probability, of ultimate bankruptcy. At such a time, he will

require the services and advice of counsel, frequently with the hope of avoiding bankruptcy proceedings altogether. There is no doubt that, in a sense, both attorney and client are acting "in contemplation of the filing of a petition." In such cases, as was said by the court in Re Wood and Henderson, 210 U. S. 253, 28 S. Ct. 624 (52 L. Ed. 1046), the law "recognizes the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him in view of financial reverses and probable failure. It recognizes the right of such a debtor to have the aid and advice of counsel, and, in contemplation of bankruptcy proceedings which shall strip him of his property, to make provisions for reasonable compensation to his counsel. And in view of the circumstances the act makes provision that the bankruptcy court administering the state may, if the trustee or any creditor question the transaction, re-examine it with a view to a determination of its reasonableness."

We believe the correct rule is as stated in Re Stolp (D. C.) 199 F. 488, and as developed in Tripp v. Mistchrich (C. C. A.) 211 F. 424. The findings of fact of the referee entitle the trustee to a re-examination of the transaction. Upon such re-examination, the referee should take into consideration the fair value of services rendered after July 1, 1925, which were relevant to the contemplated bankruptcy and germane to the general aims of the Bankruptcy Act. It seems to the court that advice in connection with bankrupt's financial difficulties and insolvency and the preparation of an assignment for the benefit of creditors would be properly considered. Services directly arising out of the bankruptcy proper may be allowed, under section 64b (3) of the act, and are not to be considered in this proceeding. In re Stolp, supra.

The order of the referee is therefore affirmed, but modified in accordance with the foregoing opinion.

---

### MARR OIL HEAT MACH. CORPORATION et al. v. HARDINGE BROS., Inc.

District Court, N. D. Illinois, E. D. June 15, 1927.

No. 4845.

**1. Patents ☞328—1,158,058, King patent, for oil burner, held valid, and claims 1, 2, 5, and 10 infringed.**

King patent, No. 1,158,058, for oil burner, *held* not anticipated, valid, and claims 1, 2, 5, and 10 infringed.

20 F.(2d)—16

**2. Patents ☞72(4)—Prior device, though capable of performing function of patent by modification, is not "anticipation," where not designed nor used for it.**

It is not sufficient to constitute anticipation that a prior device might by modification be made to accomplish the function of the patented device, if it was not designed by its maker, nor adopted nor actually used for the performance of such function.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Anticipation.]

In Equity. Suit by the Marr Oil Heat Machine Corporation and the Bunting Iron Works against Hardinge Bros., Inc. Decree for complainant.

Emery, Booth, Janney & Varney, of Chicago, Ill. (Thomas H. Sheridan, of Chicago, Ill., and Frank D. Merchant, of Minneapolis, Minn., of counsel), for plaintiffs.

Williams, Bradbury, McCaleb & Hinkle, of Chicago, Ill., for defendant.

LINDLEY, District Judge. Plaintiffs, owner and licensee, respectively, of patent to King, No. 1,158,058, issued October 26, 1925, charge defendant Hardinge Bros., Inc., with infringement, and pray for an injunction and an accounting. The answer asserts invalidity and noninfringement. Plaintiffs rely upon claims 1, 2, 5, and 10 of King, which are set forth in the margin.[1]

---

[1] 1. In a centrifugal burner, the combination of a casing open at its upper end, an open enlarged cup shaped centrifugal atomizer journaled in the casing, said atomizer having its open end projecting through the upper end of the casing, and means for introducing oil into the lower end of the atomizer.

2. In a centrifugal burner, the combination of a casing open at its upper end, an open outwardly flaring enlarged cup shaped centrifugal atomizer journaled in the casing, said atomizer having its open end projecting through the upper end of the casing and spaced from same, means for introducing oil through the lower end of the atomizer, and means for introducing an air current through the casing between the atomizer and the casing.

5. In a centrifugal burner, the combination of a casing open at its upper end, an oil-delivering hollow standard, centrally disposed and secured within the casing, a sleeve revolubly mounted on said standard, an open cup centrifugal atomizer secured to the sleeve and projecting through the upper end of the casing, said atomizer and casing inclosing an air conduit, means for forcing an air current through the conduit, a collar mounted on the upper end of the casing, said collar in conjunction with the atomizer forming an annular discharge for the air conduit, and means for adjusting the position of the collar to increase or decrease the area of the annular discharge opening.

10. The combination in a centrifugal oil burner, of a casing open at its upper end, a vertically disposed tubular shaft journaled in the