In re HABEGGER.

(Circuit Court of Appeals, Eighth Circuit. July 22, 1905.)

No. 55.

1. BANKRUPTCY—PREFERENCES—SECURING ATTORNEY'S FEE.

A transfer of property by an insolvent debtor, immediately prior to and in contemplation of bankruptcy proceedings, to an attorney, in consideration of the attorney agreeing to perform legal services in negotiating with the creditors of such debtor for a settlement of his financial difficulties without resort to the bankruptcy court, is not validated by section 60d of the national bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]), and the property so transferred may be recovered by the trustee of the bankrupt estate.

2. SAME.

Such transfer of property, made under like circumstances, to an attorney, in consideration of his agreeing to defend the bankrupt debtor against anticipated criminal prosecutions, which are not brought until after the filing of a petition in bankruptcy, is not made valid by section 60d of the act, but may be avoided, and the property recovered by the trustee in bankruptcy.

3. SAME—CHARACTER OF SERVICES.

The kind of legal services to be performed for which an insolvent debtor contemplating bankruptcy proceedings may contract and make payment for in money or by a transfer of property, under the provisions of section 60d of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]), are such services as are rendered in aid of the purpose sought to be accomplished by the act, conserve and benefit the estate of the bankrupt, and thus inure to the benefit of creditors, or are such legal services as are contemplated by the act in bringing the bankrupt estate before the court, its subsequent administration and distribution to the creditors, and the like.

(Syllabus by the Court.)

Petition for Revision of Proceedings of the District Court of the United States for the District of Minnesota, in Bankruptcy.

The controversy here presented for decision arises from the following state of facts: On October 31, 1903, one H. Burton Strait, being in financial difficulties, employed Charles R. Fowler, a regular practicing lawyer, to negotiate, and, if possible, arrange, with his creditors for an extension of time of payment of his indebtedness and settlement of his affairs out of the bankruptcy court. On that day Fowler entered upon this employment, saw and negotiated with the creditors of Strait, attempted to obtain an extension of time of payment of his indebtedness, and a settlement of his financial difficulties out of court, without success. On November 2d, thereafter, Strait received information that his creditors were contemplating the institution of criminal proceedings against him on the charge of receiving deposits in his bank, known as the "Scott County Bank," at a time when it was insolvent, and known to be so by Strait. On that day Strait further employed Fowler to defend him in case any such criminal proceedings should be instituted against him. At this time Strait assigned to Fowler promissory notes aggre-

gating $1,500, and a mortgage given to secure the same, as a retainer, and by way of compensation to Fowler for services so to be rendered. At this time Fowler did not know Strait was insolvent or that bankruptcy proceedings were contemplated. On the 4th day of November, thereafter, it became apparent the financial difficulties of Strait could not be adjusted, and that bankruptcy proceedings would be commenced, and on that day he employed Fowler to represent him in the bankruptcy proceedings, and agreed to pay him, as compensation for his services, the sum of $500 as attorney's fees and $30 necessary expenses in the bankruptcy proceeding, which sums were to be received from the securities theretofore transferred to Fowler, and further agreed he should have and retain the remainder of the proceeds of the notes and mortgage as compensation for his services in attempting to arrange an extension of time with his creditors and in negotiating for settlement of his financial difficulties out of court, and for his services in such criminal proceedings as might thereafter be commenced against him. Thereafter, on the 6th day of November, bankruptcy proceedings were instituted, and Strait was on that day adjudged a bankrupt. Petitioner herein was duly chosen and qualified as trustee in bankruptcy of his estate. After the commencement of the bankruptcy proceedings criminal prosecutions were instituted against Strait in the state court of Minnesota, which criminal prosecutions, under his contract of employment, were defended by Fowler. Thereafter the trustee filed his application in the bankruptcy court against Fowler, tendering to him the sum of $530, his necessary costs and compensation as an attorney for Strait in the bankruptcy proceedings, and praying an order requiring the surrender of the notes and mortgage transferred to him by Strait on such payment being made. This application Fowler answered, claiming the remainder of the proceeds of the securities transferred to him by Strait to have been received in payment of his compensation as an attorney in negotiating with the creditors of Strait for an extension of time and settlement of his financial difficulties out of court, and also for defending Strait in criminal proceedings brought against him after the commencement of the bankruptcy proceedings, as theretofore agreed by Strait with him. The matter was submitted to the referee in bankruptcy on the application made by the trustee and the answer of Fowler thereto, without other evidence or proofs. The facts as herein stated are taken from the application and answer. The referee at the hearing dismissed the application of the trustee. This order was affirmed by the District Court, and the trustee has filed in this court his petition for a review of that order.

F. J. Leonard and F. C. Irwin, for petitioner.

Edward H. Crooker, for respondent.

Before HOOK, Circuit Judge, and CARLAND and POLLOCK, District Judges.

POLLOCK, District Judge, after stating the case as above, delivered the opinion of the court.

The right of Fowler, as attorney for the bankrupt, to receive payment of $530 in compensation for his services and expenses in the bankruptcy proceedings, before being compelled to surrender the securities transferred to him by the bankrupt, is conceded by the trustee in his application, and is thus removed from consideration in this case. The controversy arises over the right of Fowler to retain the securities absolutely, under his agreement with the bankrupt, made before the adjudication in bankruptcy, in payment of professional services rendered and to be rendered under the terms of such agreement. The claim thus made by Fowler to the securities is based on two grounds: First, his right to withhold the same in payment of his services in negotiating with the creditors of Strait for an adjustment and settlement of his financial difficulties out

of the bankruptcy court; second, for legal services to be performed by Fowler in defending Strait in criminal prosecutions thereafter to be brought against him, which contract was executory in its nature at the time the petition in bankruptcy was filed, as no criminal prosecutions were brought against the bankrupt prior to the filing of the petition in bankruptcy and adjudication thereon. Can either of such claims be relied upon by the attorney by way of defense to the application made by the trustee?

There are two provisions of the national bankruptcy act relating to the compensation of attorneys. Clause 3 of section 64b provides what attorney's fees shall have priority and be paid in full out of the assets of the bankrupt estate, as follows:

"The cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow." Act July 1, 1898, c. 541, 30 Stat. 563 [U. S. Comp. St. 1901, p. 3448].

Clause "d" of section 60 provides the extent to which money paid or property transferred by a debtor contemplating insolvency to an attorney or other legal counsel, in compensation for services thereafter to be rendered, shall be declared valid as a preference, as follows:

"If a debtor shall, directly, or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate." Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446].

The comprehensive, general, and unrestricted language employed in this section, in failing to define the character of the legal services to be performed which shall entitle the doer to retain the money paid or property transferred to him, under the provisions of the act, as a preferred creditor, has given rise to much doubt as to its intent and meaning, which doubt is only aggravated by the use of the terms "solicitor in equity" and "proctor in admiralty." Thus it is the contention of the claimant, Fowler, this section applies to and validates any contract made by a debtor contemplating bankruptcy with his attorney for future legal services to be performed, where there is a present payment of money or transfer of property, to the extent that such payment or transfer may be found reasonable compensation for the services to be performed, and that to such extent the attorney is a preferred creditor of the estate, regardless of the character of the legal services to be performed, whether such services are beneficial to the estate of the bankrupt or otherwise. Therefore, he contends in this case, his contract for services to be rendered the bankrupt in attempting to secure an extension of time and settlement of his financial difficulties with his creditors out of

139 F.—40

court, and to defend him against criminal proceedings thereafter to be instituted, in consideration of the present transfer of the securities, is valid, and he is a preferred creditor to the extent the value of the securities reasonably bears to the legal services agreed to be performed under the contract. On the other hand, it is the contention of the petitioning trustee, the legal services provided for in the act, and by section 64b of the act awarded priority of payment over the demands of other creditors against the estate, or which are permitted to stand as a valid preference under the provisions of section 60d of the act, when paid by the debtor before contemplated bankruptcy, are such services only as tend to conserve the estate to the creditors, bring it before the court for adjudication and distribution, and other like legal services rendered to the creditors or bankrupt, required or necessary to be done under the terms of the act in carrying out and rendering effective its purpose.

From a consideration of the entire act, having in mind the dominant object and purpose is to protect the estate of failing debtors and to distribute it among creditors pro rata in proportion to their provable demands, to guard it from preferred creditors and fraudulent grantees, and in the end to provide for the discharge of the honest debtor, we are inclined to agree with the contention made by the trustee, notwithstanding the broad, general language of section 60d, and for this reason: From an examination of the entire act it will be seen no other or different provision is made respecting the allowance or payment of the general obligations of bankrupts to their attorneys than is made for the payment of other debts of the bankrupt. The method provided by the act for the preservation of the bankrupt estate, the ascertainment of the amount of valid claims against the bankrupt, the value of the assets, the extent and priority of liens thereon, the conversion of the estate into money and its disbursement amongst creditors, preferred and general, the granting of a discharge to the bankrupt, and all other proceedings thereunder, are, in accordance with the provisions of the act, transacted in the bankruptcy court. Of necessity, such proceedings are conducted in most cases by attorneys employed by the bankrupt in voluntary cases, or by the creditors in involuntary cases. It is just and equitable such attorneys should be compensated for their services rendered in this behalf out of the assets of the estate, because of the fact that by the filing of a petition in bankruptcy the nonexempt property passes into the control of the court, leaving the bankrupt without means of payment. Hence, the clause of section 64b, above quoted, in making provision for the payment of debts which have priority, and which must be paid in full before distribution of the estate to the general creditors, makes provision for the compensation of attorneys as therein specified in cases where no contract has been theretofore made with the bankrupt and payment made in advance of the bankruptcy proceedings.

Again, the act is framed in recognition of the well-known fact that a debtor in contemplation of insolvency and consequent bankruptcy proceedings may be importuned, harassed, and annoyed by

his creditors seeking to gain an advantage over other creditors by way of preference, fraudulent conveyances, and the like; and in such extremity the bankrupt needs the advice and assistance of counsel to conserve the estate for the benefit of all creditors against spoliation and dissipation, and in the preparation of the petition, schedules, and the like papers to confer jurisdiction on the court to take charge of the estate, and, in order to obtain such legal services in contemplation of bankruptcy proceedings, may make contracts, and will make present payments of money or transfers of property to obtain such services and make payment thereof, which executory contracts, being made by one insolvent and in contemplation of bankruptcy proceedings, would under other provisions of the act be voidable as a preference, unless protected by section 60d. Therefore such payments of money or transfers of property to an attorney by one contemplating bankruptcy as tend to conserve the estate and bring it before the bankruptcy court for settlement, or other services required by the terms of the bankruptcy act to be performed by the bankrupt, are made valid as a preference under that section, to the extent they are found upon examination to be reasonable and equitable; such claims being in principle entitled to equitable priority, as are claims for services performed or property furnished in the preservation and betterment of an estate controlled and administered by a court of equity. All other claims for legal services are allowable only as a general claim against the estate of the bankrupt in the hands of the trustee. In view of the oft-repeated declarations of courts as to the object and purpose of the national bankruptcy act, as to the advantages accruing to creditors and the debtor, as well by an honest, conservative, and expeditious preservation and administration of the estate according to its letter and spirit, and as to the many mischiefs sought to be guarded against by its enactment and enforcement, the construction here given section 60d seems to us to be most in consonance with the purpose sought to be accomplished by the act, as declared by the courts, and as gathered from the several sections of the act construed as a whole, and also to be in harmony with the better reasoned cases bearing upon the subject, as will be seen by reference thereto.

In Re Kross (D. C.) 96 Fed. 816, the question for decision was the right of an attorney for the bankrupt to demand and receive payment of his fees as a prior claim against the estate of the bankrupt in the hands of the trustee, under section 64b. Brown, District Judge, delivering the opinion of the court, after defining the nature of the legal services performed for a bankrupt which are entitled to priority and payment in full under the provisions of section 64b, in discussing the relation and interdependence of sections 64b and 60d in this respect, says:

"This construction is further sustained by subdivision 'd' of section 60, which provides that the 'payment of money or transfer of property to an attorney or counselor for services to be rendered in contemplation of the filing of a petition by or against a person * * * shall be re-examined by the court * * * and held valid only for a reasonable amount to be determined

by the court, the excess to go to the trustee.' While by the general terms of the act the debtor is required to turn over all his unexempt property to the trustee, an exception is here created in favor of an attorney, to a reasonable amount, for services to be rendered to the debtor in bankruptcy, although this is valid so far only as subsequently approved by the court. The charges to be 'approved' are, I cannot doubt, for the same services which the 'fee' is designed to be allowed for, under section 64, subd. 'b,' par. 3. Both paragraphs are to be construed together, so that it becomes immaterial in the result whether the attorney obtains his compensation in the first instance from the bankrupt under section 60 refunding what, if anything, is disallowed by the court, or whether he waits for an allowance by the court under section 64. The latter is evidently the more convenient and desirable practice; and, considering that prior payment for an attorney's services to the bankrupt is expressly allowed by section 60, I cannot agree to any such construction of the act as would deprive the attorney of a proper compensation for a necessary service merely because he did not take it out of the estate at his own estimate in advance."

In Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, the following questions were certified to that court from the Circuit Court of Appeals for the Sixth Circuit for instruction:

"(1) Is a claim for professional services, rendered to a bankrupt corporation in the preparation of a general assignment, valid under the law of Tennessee, entitled to be paid as a preferential claim out of the estate of the corporation in the hands of a trustee in bankrupcy, when the corporation was adjudicated an involuntary bankrupt within four months after the making of the assignment, and the assignment set aside as in contravention of the bankrupt law? (2) Is a claim for professional advice and legal services rendered such an assignee, prior to an adjudication of bankruptcy, against the assignor, the assignment providing that the costs and expenses of administering the trust should be first paid, entitled to be proven as a preferential claim against the bankrupt estate? (3) Is a claim against such an assignee for legal services, rendered at his employment in resisting an adjudication of involuntary bankruptcy against the assignor, allowable as a preferential claim, when the necessary effect of the adjudication would be to set aside the assignment under which the assignee was acting? (4) If not entitled to be allowed as preferential claims, may either of the items described in the foregoing questions be proven as unsecured debts of the bankrupt corporations?"

These questions were answered by that court as follows:

"(1) No. (2) Not under the deed; but, so far as the assignee would be allowed for payment of the claim, the claim may be preferred in the right of the assignee. (3) Not on the facts appearing in the certificate. (4) The charge for the preparation of the deed may be proved as an unsecured claim."

Mr. Justice Holmes, in delivering the opinion of the court, said:

"We are not prepared to go further than to allow compensation for services which were beneficial to the estate. Beyond that point we must throw the risk of his conduct on the assignee, as he was chargeable with knowledge of what might happen. It does not appear how far the services to the assignee were beneficial. Therefore the questions of the Circuit Court of Appeals cannot be answered in full. But the principles as to which it desired instruction may be stated sufficiently for the disposition of the case upon a subsequent finding of facts. None of the claims is entitled to preference under the deed. The charge for the preparation of the assignment properly may be proved as an unpreferred debt of the bankrupt. The services to the voluntary assignee may be allowed so far as they benefited the estate, and inasmuch as he would be allowed a lien on the property if he had paid the sum allowed, the appellants may stand in his shoes and may be preferred to that extent. No ground appears for allowing the item for services in resisting an adjudication of bankruptcy. See Platt v. Archer, 3 Blatchf. 351, 354, Fed. Cas. No. 11,214; Perry-

Mason Shoe Co. v. Sykes, 72 Miss. 390, 398, 17 South. 171, 28 L. R. A. 277;
T. T. Haydock Carriage Co. v. Pier, 78 Wis. 579, 582, 47 N. W. 945; Clark
v. Sawyer, 151 Mass. 64, 23 N. E. 726."

While the Supreme Court in this case did not place its construction on the provisions of the act now under consideration, or determine the analogy of the legal services provided for in the one section of the act to that of the other, yet it is an authority on the class of legal services performed for an assignee, who stands in the place of the bankrupt, entitled to priority of payment under the terms of the entire act, out of the assets of the estate in the hands of the trustee, and is, to our minds, a conclusive holding that such general legal services only as are beneficial to the estate are to be so preferred. This is the construction given to the clause of the act under consideration by Mr. Collier in his work on Bankruptcy (5th Ed., p. 464). See, also, In re Smith (D. C.) 108 Fed. 39, In re Rosenthal & Lehman (D. C.) 120 Fed. 848, and In re Lewin (D. C.) 4 Am. Bankr. Rep. 632, 103 Fed. 852.

On the other hand, Furth v. Stahl, 10 Am. Bankr. Rep. 442, 55 Atl. 29, and Pratt v. Bothe, 130 Fed. 670, 65 C. C. A. 48, would seem to be authority in favor of the contention here made by the claimant, Fowler. The latter was a controversy over a claim for legal services, part of which were performed before and a part after the filing of the petition in bankruptcy, under a contract secured by mortgage made with the bankrupt before the filing of the petition. The nature of the legal services performed before the institution of the bankruptcy proceedings does not appear. It would seem, however, from the reasoning of the opinion, this was not thought material; for it is there said:

"Upon the construction which we think should be given to section 60d, there having been no petition of the trustee or any creditor that the court should inquire into the reasonableness of the amount of the compensation agreed to be paid by the debtor, we think the claim of the petitioner for charges incurred before the commencement of the bankruptcy proceedings should have been allowed at the sum of $241.75, less the sum of $150 admitted to have been paid, which would leave a balance of $91.75. This, of course, does not include the $37.50 allowed by the judge under section 64b. As the rights of the parties are governed by the special provisions of the statute relating to the subject, no question of preference by reason of the payments arises."

From this and other language of the opinion it would seem to be thought by that court the construction and effect to be given section 60d must depend alone upon the time of performance of the legal services, and not upon the character or class of such services; that all claims for services performed before the filing of the petition, contracted and paid for by a debtor contemplating bankruptcy in money or by a transfer of property, must stand, if reasonable, as a preferred claim, and all claims for legal services performed thereafter must be disallowed. If the decision there made is as the opinion would seem to indicate, we are not prepared to agree with the reasoning employed or the conclusion reached; for, in the very reason of things, why should an insolvent debtor, contemplating bankruptcy, be permitted to mortgage his property to secure the

payment of legal services to be performed in the future, not beneficial to his estate, any more than he should be permitted to mortgage his property to secure payment of money to be paid in future? The act was passed for the protection of existing creditors of insolvent debtors, and to work a discharge of the honest bankrupt who subjects his available property to the payment of his just debts, and not for the purpose of validating his contracts. If an insolvent, contemplating bankruptcy, transfers his property in payment of future legal services to be performed, not beneficial to his estate and which do not inure to the benefit of his creditors, why is such a transfer not a voidable preference or a fraudulent transfer under other provisions of the act, to the same extent as are other transfers of his property without present fair consideration.

In Furth v. Stahl, supra, the Supreme Court of Pennsylvania held there is no relation existing between the kind of legal services provided for in section 60d and clause 3 of section 64b of the act. This distinction is based on the single fact that in the one case the services are contracted for by the bankrupt and are services to be performed in future, and in the other they are allowed by the law without express agreement. The thought that in the one case Congress was dealing with preferential payments, and in the other with claims entitled to priority of payment out of the assets of the estate, is lost sight of or not considered. We are not impressed with the reason given for the distinction made. Why the bankrupt may not in advance contract for and make payment of the identical legal services required to be performed under the terms of the act, or in aid of its purpose, is not apparent. Such constructions, to our minds, lay too much stress upon the language of a single clause, are not in harmony with the beneficial purpose sought to be accomplished by the act, and would lend inducement too strong to fraudulent payments and transfers to one occupying a fiduciary relation, which would be difficult of investigation because of the confidential relations of the contracting parties. We prefer rather to confine the general language of the section, by construction, to such legal services as are clearly shown to have been beneficial to the estate, or to such services as are required or may be performed by the bankrupt under the terms of the act, and to that extent, only when reasonable, hold payments made or property transferred valid as preferential payments, and beyond that voidable at the suit of the trustee or creditors of the estate. If it be thought the terms employed in the section, "solicitors in equity" or "proctors in admiralty," require a different construction of the section, as was thought in Pratt v. Bothe, supra, we find no inherent reason in the character of the legal services performed by such professional talent in this country as would preclude their giving advice or rendering services to insolvent debtors which would inure to the benefit of the estate, or in the nature of things would preclude their preparing schedules of assets and liabilities and other like papers, for the purpose of bringing the estate before the bankrupt court for settlement.

It follows, from the construction here placed on the section of the act relied upon by the claimant, Fowler, in justification of his withholding the securities from the estate, the services by him performed were not such as are in their nature beneficial to the estate of the bankrupt, or as are required to be performed by the bankrupt under the provisions of the act. The claim for services in attempting to settle the financial difficulties of the bankrupt out of the bankruptcy court were rendered in opposition to bringing the estate before the court, and therefore should be clearly disallowed, under the ruling in Randolph v. Scruggs, supra. In so far as the claim is made for legal services performed on behalf of the bankrupt in defending him from criminal prosecutions, such services were neither beneficial to the estate, nor are they in their nature such legal services as are contemplated by the terms of the bankruptcy act, or as may be compensated from the assets of the estate in the hands of the trustee as a preferred claim; and this, even though such services had been performed before the filing of petition of bankruptcy and the consequent transfer of the estate into the grasp of the court.

The order of the District Court dismissing the petition of the trustee must be reversed, with directions to grant the relief therein prayed. It is so ordered.