TRIPP v. MITSCHRICH.

(Circuit Court of Appeals, Eighth Circuit. January 26, 1914.)

No. 3982.

*(Syllabus by the Court.)*

1. BANKRUPTCY (§ 170*)—RE-EXAMINATION OF ATTORNEY'S FEE—ISSUES.

In a proceeding by a trustee in bankruptcy against an attorney for a re-examination of. the latter's fee, prosecuted under section 60d of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3446]), the question in limine is whether the debtor, in making the transfer to the attorney, was acting in contemplation of the filing of a bankruptcy petition by or against him.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271; Dec. Dig. § 170.*]

2. BANKRUPTCY (§ 288*) — RE-EXAMINATION OF ATTORNEY'S FEE — SUMMARY PROCEEDINGS—JURISDICTION.

If the contract with the attorney was not made by the debtor in con-. templation of bankruptcy proceedings, the case is not within section 60d of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3446), and there is no jurisdiction to proceed summarily.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

3. BANKRUPTCY (§ 288*)—RE-EXAMINATION OF ATTORNEY'S FEE—JURISDICTION.

If made in contemplation of such proceedings, the bankruptcy court is by section 60d of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 562 (U. S. Comp. St. 1901, p. 3446), authorized to proceed summarily, but upon due notice, to determine to what extent, if any, the fee is excessive or, indeed, allowable at all.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 447; Dec. Dig. § 288.*]

4. BANKRUPTCY (§ 170*)—RE-EXAMINATION OF ATTORNEY'S FEE—"IN CONTEM-PLATION OF THE FILING OF A PETITION BY OR AGAINST HIM."

The words "in contemplation of the filing of a petition by or against him" do not mean simply the consciousness by the debtor of a financial condition enabling him to file, or subjecting him to, such a petition, but such must have been of influence in the transfer of property or money which is being questioned under this section. There must be some rela-tion, of cause and effect, between the knowledge of his condition and the transaction with the attorney.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271; Dec. Dig. § 170.*]

5. BANKRUPTCY (§ 170*) — RE-EXAMINATION OF ATTORNEY'S FEE — MATTERS CONSIDERED.

Whether, in making the transfer to the attorney, a purpose germane to the question of bankruptcy proceedings existed is to be ascertained either by direct testimony as to what the debtor said in making the transfer, or, in the absence of these, by the circumstances surrounding the transfer and, among other circumstances, the character of the services contracted for.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271; Dec. Dig. § 170.*]

6. BANKRUPTCY (§ 170*)—RE-EXAMINATION OF ATTORNEY'S FEE—NATURE OF ATTORNEY'S SERVICES.

If the case turn upon the latter, the service must be of a kind relevant to the matter of bankruptcy, not one which would be necessary and proper

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the ordinary course of business, whether bankruptcy was to supervene or not.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271; Dec. Dig. § 170.*]

7. BANKRUPTCY (§ 170*)—RE-EXAMINATION OF ATTORNEY'S FEE—CONTRACT IN CONTEMPLATION OF BANKRUPTCY.

A contract by the debtor, three days after a fire, with an attorney to collect insurance policies held on a stock of goods, destroyed and upon which liability was being questioned by the insurance companies, is a proceeding in the usual course of business having no necessary relationship to bankruptcy, and such a contract cannot of itself justify the conclusion that it was made in contemplation of the filing of a bankruptcy petition either by or against the debtor.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271; Dec. Dig. § 170.*]

8. BANKRUPTCY (§ 170*)—RE-EXAMINATION OF ATTORNEY'S FEE—CONTRACT IN CONTEMPLATION OF BANKRUPTCY.

The additional fact that five days after the transfer certain creditors filed proceedings in bankruptcy against the debtor does not of itself raise the presumption that the debtor in making the transfer, was acting in contemplation of bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 267, 271; Dec. Dig. § 170.*]

Appeal from the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Petition by Harry F. Tripp, trustee in bankruptcy for the estate of S. C. English, bankrupt, praying a re-examination of a fee received by Charles Mitschrich. The court reversed the action of the referee, holding that he had jurisdiction and that the fee was excessive, and the trustee appeals. Affirmed.

C. H. Nicholas and R. A. Lyle, both of Oklahoma City, Okl., R. L. Spencer and John C. Landis, Jr., both of St. Joseph, Mo., and L. M. Gensman, of Lawton, Okl., for appellant.

Charles Mitschrich, of Lawton, Okl., pro se, and Ames, Chambers, Lowe & Richardson, of Oklahoma City, Okl., for appellee.

Before SANBORN and SMITH, Circuit Judges, and POPE, District Judge.

POPE, District Judge. One S. C. English was a merchant at Lawton, Okl. On December 20, 1910, his stock of merchandise was destroyed by fire. On December 23, 1910, he entered into a written contract with the appellee, Mitschrich, an attorney at law, to represent him in collecting the fire insurance on the destroyed stock. This insurance aggregated between $16,000 and $20,000, distributed among some eight companies. The contract allowed the attorney 30 per cent. of the amount collected if without suit and 50 per cent. of all claims collected by suit, and gave a lien upon the proceeds for the fee. The percentage allowed the appellee was within the limits prescribed by the Oklahoma statute regulating contingent fees.

On December 28, 1910, and thus five days after the making of this contract, certain creditors filed a petition in bankruptcy against Eng-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

lish. This petition was demurred to by him, the demurrer sustained, an amended petition filed, and an adjudication against him finally made on this last petition on April 7, 1911. Meanwhile, and between January 20, 1911, and February 20, 1911, Mitschrich made settlement on behalf of English with various insurance companies retaining under his contract 30 per cent., amounting to $4,805.88, as compensation; the balance going to English. On September 22, 1911, the appellant, Tripp, who had been appointed trustee in bankruptcy, filed a petition before the referee setting forth that the fee received by Mitschrich was excessive and praying a re-examination of it by the referee under section 60d of the Bankruptcy Act. Mitschrich was served personally with a copy of this order and filed an answer objecting to the jurisdiction of the court to proceed in the matter and further setting up his contract with English under which he claimed a lien for the amount held by him. The answer asserts that at the time that he entered into the contract with English he had no knowledge of the financial condition of English and denied that the contract was in contemplation of bankruptcy or for services rendered or to be rendered in connection with such proceedings. The referee held that the matter was within his jurisdiction and that the fee, so far as it exceeded $1,600, was excessive. Thereupon, upon petition for review, the court reversed the action of the referee, holding that there was no jurisdiction and dismissing the petition without prejudice to a suit at law or in equity by the trustee against Mitschrich. From this the trustee has appealed.

[1-3] We are of opinion that, unless the case be within section 60d, the matter asserted by the trustee against the appellee constituted a controversy in which the latter was claiming adversely and in which he was entitled to have his rights tested by plenary proceedings. Such rights as he asserted were under an instrument purporting to give a lien. This antedated by some five days the filing of the bankruptcy proceeding and preceded the adjudication some three or four months. Neither the bankrupt nor his trustee ever had possession of the money in dispute. It passed direct from third parties, the insurance companies, to the attorney some months before the adjudication and the appointment of the trustee. The case was therefore one of an adverse claim and could not be reached summarily, save by virtue of some special provision of statute. In re Rathman, 183 Fed. 913, 920, 106 C. C. A. 253. To this end section 60d is invoked by the trustee. It is as follows:

"If a debtor shall, directly or indirectly, in contemplation of the filing of a petition by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be re-examined by the court on petition of the trustee or any creditor and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate."

Since In re Wood & Henderson, 210 U. S. 246, 28 Sup. Ct. 621, 52 L. Ed. 1046, it is of course settled that this section justifies summary proceedings and a readjustment of the compensation of the attorney where the facts present a case within its terms. But that decision is specifically limited to cases where the debtor acts in contemplation of

bankruptcy. It is there said (210 U. S. 258, 28 Sup. Ct. 626, 52 L. Ed. 1046):

"This section in. effect confers a special jurisdiction in a bankruptcy proceeding; it is only available when property has been transferred in contemplation of the filing of a petition in bankruptcy."

If English, therefore, in transferring property to Mitschrich was doing so in contemplation of a proceeding in bankruptcy, the case is within section 60d and remediable by summary proceedings, otherwise not. Thus the matter even at the threshold is one of fact. The referee held that what was done was in contemplation of a bankruptcy proceeding. The trial judge thought otherwise. Upon familiar principles of appellate procedure, unless this latter conclusion be found manifestly wrong upon the facts or clearly erroneous upon the law, the decision must be upheld.

[4] This involves a consideration of what is meant by the words "in contemplation of the filing of a petition by or against him," as used in section 60d, and, this being settled, there is the further consideration of whether the act of the bankrupt herein involved was in such contemplation.

The words "in contemplation of bankruptcy" refer·to·the state of mind of the debtor, not of the attorney. This results from an even casual reading of the section. But what is meant by contemplation? We are of opinion that as here used it means more than a simple consciousness of insolvency. As was said by Patteson, J., in Morgan v. Brundrett, 5 Barn. & Adolph. 297, cited in Jones v. Howland, 8 Metc. (Mass.) 377, 41 Am. Dec. 525: "A man may be insolvent and yet not contemplate bankruptcy." And in Buckingham v. McLean, 13 How. 151, 167 (14 L. Ed. 90): "He may contemplate insolvency and the breaking up of his business and yet not contemplate bankruptcy." Contemplation thus means more than the knowledge that a. bankruptcy proceeding either by or against the debtor is impending. It means that in making the transfer the debtor is influenced by the possibility or imminence of such a proceeding. There must be some relation as of cause and effect between knowledge of his condition and the transfer. The latter must to some extent at least be attributable to his financial condition. This may be illustrated by gifts in contemplation of death. Such are not simply gifts made in light of the possibility that one may soon die. They are made because of a consciousness of this fact. In the case both of contemplation of death and. in contemplation of bankruptcy proceedings, the possibility in each case must be upon the mind as an element leading to the result, to wit, the transfer. In a case under section 60d the debtor must of course be confronted with the possibility of a bankruptcy proceeding. But there must be more. There must·be a transfer induced at least to some extent by such a situation. This is considered in Hayden v. Chemical National Bank, 84 Fed. 876, 28 C. C. A. 550. There, in dealing with the phrase "contemplation of insolvency," the court says:

"A bank or a business concern may be considered to be acting in contemplation of insolvency when, in making some disposition of its assets, it is actuated by its knowledge of its insolvency. * * * An act done by a corporation in

the ordinary and usual course of business, uninfluenced by the state of its affairs, cannot be said to have been done in contemplation of insolvency."

See, also, Jones v. Howland and Buckingham v. McLean, each cited supra.

[5] With this as the meaning of section 60d, there simply remains for determination in a given case whether this state of mind existed and actuated in the transfer involved. In ascertaining such, as in determining all human motive, we enter upon a domain where circumstances must usually be relied upon for enlightenment. True, the express statement of the party in making the transfer may afford direct evidence of the actuating thought. But more ordinarily this is to be ascertained from the surrounding circumstances. Or in still other cases it is to be determined by reasoning back from what he did to what he must have had in mind in so doing.

[6] It is in this latter aspect that the nature of the services to be rendered by the attorney under section 60 (a matter considerably treated in the authorities) becomes material. If what is done is the result of a contemplation of bankruptcy proceedings, it is immaterial to the question of jurisdiction what the nature of the services contracted for may be. Section 60 does not define these, and any character of legal service is re-examinable, provided, always, that the transfer providing for it is made in contemplation of bankruptcy proceedings. Of course we must at this point distinguish between what is re-examinable and what is allowable. The former relates to jurisdiction; the latter assumes jurisdiction and inquires what is a proper charge. We are dealing at the present moment with the jurisdictional question. In determining this, as has been pointed out, the character of the service is for consideration in order to determine whether the matter is one of summary jurisdiction. But the nature of the service is after all a secondary matter. The intent is the primary one. The considerations entering into a determination of this may perhaps be best stated by way of illustration. In a transfer made, by its terms, for services to be rendered in a voluntary proceeding which the debtor expects to bring, the transaction is clearly re-examinable and thus within the summary jurisdiction of section 60d; and this because the intent is present as shown by the very nature of the services contracted for. It is equally clear that, where a transfer is made in consideration of services in defending a bankruptcy proceeding which the debtor expects against him, the transfer is examinable in the summary manner prescribed by section 60d, and this likewise for the reason that the nature of the services contracted for conclusively shows that they are contracted for in contemplation of insolvency. But suppose we have a case where the contract upon its face is for services apparently disconnected with any apprehension of bankruptcy proceedings, as, for instance, a contract to defend the debtor for murder. Such a contract would prima facie not be in contemplation of bankruptcy proceedings, for the latter have no association with murder, which is a personal, not a business, affair. Such a transfer would thus, unless more be proved, not be re-examinable under section 60d. But suppose part of the service, contrary to the terms of the written contract, was in fact to be in connection with the

bankruptcy proceeding. Or suppose such a contract were a mere cloak under which, pretending to pay an attorney a large sum for a fee in a murder case, there was concealed an arrangement by which only a part of this was to go for such services but the remainder was to be held for the uses of the debtor and paid over to him in fraud of the apprehended bankruptcy proceedings. Would not such a case be within section 60d? We think so, and this for the reason that, while the transfer upon its face was for services not within section 60d, still the arrangement after all was in contemplation of and with a view to circumvent an apprehended and imminent bankruptcy proceeding. We are of opinion, therefore, that the intent or thought in the mind of the debtor is the thing which characterizes the whole matter, and, unless we can say from the facts that this intent exists, we cannot sustain a summary jurisdiction.

[7, 8] Applying these views to the present record, we search in vain for anything which shows that this contract with the appellee was prompted by impending bankruptcy. The store of the debtor was burned down. He felt the need of legal assistance in collecting the insurance. He contracted with the appellee for this assistance. This was a transaction in the usual course of business. There was nothing germane to the matter of bankruptcy in it. It mattered not whether English was to resume business or to go into bankruptcy. In either event he would want his insurance collected. There was therefore nothing in the character of the contract which impressed the transaction with the necessary statutory intent. Was there anything in the surrounding circumstances that so characterized it? Mitschrich by his answer asserts that he had no familiarity with the financial condition of English when this contract was made; that he did not then know whether English was insolvent or not. He also denies that any of the services contracted for or performed were in connection with the bankruptcy proceedings. Neither he nor English were sworn on the trial, and the only testimony presented by the trustee which is in the slightest degree enlightening upon this point is the mere fact that on December 28th, and thus five days after the making of this contract, a bankruptcy proceeding was instituted against English, and that, in certain negotiations with his creditors between Christmas and January 1st, Mitschrich represented him, and that subsequently, in resisting the bankruptcy suit, Mitschrich appeared for him. We cannot upon this state of the record hold that in making it English was acting in contemplation of proceedings against him. It is of course within the range of possibilities, as counsel suggests, that there was latent in this transaction a surplus of fee for the benefit of English to be paid over to him after the bankruptcy matter had all blown over. But, if any such arrangement existed, the trustee has failed to prove it either by direct evidence or by circumstances justifying our so inferring. The trial court, as we have above pointed out, was of the opinion that the contract was not made in contemplation of bankruptcy. Even conceding that there was room for divergent inferences from the testimony, we see no reason to say that there was manifest error in the conclusion reached by the trial judge. The case is thus not within section

60d. Whatever may be the rights of the trustee against Mitschrich in a plenary suit, there is no jurisdiction to proceed against him summarily.

A number of cases are cited which it is claimed necessitate a different conclusion. In re Wood & Henderson, 210 U. S. 246, 28 Sup. Ct. 621, 52 L. Ed. 1046, above referred to, is specially relied upon, but the question certified by this court to the Supreme Court in that case expressly embodied the statement that the transfer made by the debtor was "in contemplation of the filing of a petition in bankruptcy against him," and upon that basis the summary jurisdiction was sustained.

In re Cummins, 28 Am. Bankr. Rep. 385, 196 Fed. 224, decided in the United States District Court for the Southern District of New York, in May, 1912, holds that services as attorney in examining into the financial affairs of the bankrupt, evidently hoping to disentangle them, but with the final conclusion that bankruptcy was inevitable, were services within section 60d and thus protected. But this was a case manifestly dealing with services in contemplation of bankruptcy proceedings since they were with the purpose of preventing such, and as was said in Furth v. Stahl, 205 Pa. 439, 55 Atl. 29, "a man is usually very much in contemplation of a result which he employs counsel to avoid."

In the case last cited the services contracted for were services in bankruptcy proceedings which were then in contemplation by creditors and were to cover efforts to avoid the bankruptcy proceeding. And there it is further said:

"They (the services rendered) were none the less rendered in contemplation of filing of a petition in bankruptcy because directed primarily and principally to the prevention of such petition."

In re Kross (D. C.) 96 Fed. 816, is also cited. This was a case in which it was held that the fees allowable under section 60d were limited to the same services as contemplated by 64b, to wit, services rendered while performing the duties imposed upon the debtor by the Bankrupt Act. In other words, it was decided that the services contracted for must be germane to that act and must be of a character which would ordinarily be contracted for in contemplation of bankruptcy proceedings.

Our attention is also called to Pratt v. Bothe, 130 Fed. 670, 65 C. C. A. 48, decided by the Circuit Court of Appeals, Sixth Circuit. In this case the court, while recognizing the force of In re Kross, above cited, was influenced by the use of the words "solicitor in equity or proctor in admirality," found in section 60d, to say that the services within the meaning of this section would "seem" to be such as might be required "in general litigation or in the course of the debtor's business." But no such question was involved in the case; the matter for decision there being whether section 60d covered services rendered after the institution of the bankruptcy proceedings or not, and the court holding to the latter view. This is to some extent considered by this court in the case of Re Habegger, 139 Fed. 623, 71 C. C. A. 607, 3 Ann. Cas. 276, in which it was held, differing from Pratt

v. Bothe, that the kind of legal services covered by section 60d were such services only as "are rendered in aid of the purpose sought to be accomplished by the act, conserve and benefit the estate of the bankrupt, and thus inure to the benefit of creditors, or are such legal services as are contemplated by the act in bringing the bankrupt estate before the court, its subsequent administration and distribution to the creditors, and the like." It was further said in this case that legal services in negotiating with creditors for a settlement of the debtor's financial difficulties without resort to the bankruptcy court and like proceedings in agreeing to defend against criminal proceedings arising out of bankruptcy were not allowable within section 60d, but that all such claims for legal services were allowable only "as a general claim against the estate of the bankrupt in the hands of the trustee." In this case the court repudiates the suggestion that the terms "solicitor in equity or proctor in admiralty" require a different construction of the section, saying:

"We find no inherent reason in the character of the legal services performed by such professional talent in this country as would preclude their giving advice or rendering services to insolvent debtors which would inure to the benefit of the estate, or in the nature of things would preclude their preparing schedules of assets and liabilities and other like papers, for the purpose of bringing the estate before the bankrupt court for settlement."

In the case of Re Stolp (D. C.) 29 Am. Bankr. Rep. 32, 199 Fed. 488, Judge Geiger, sitting in the United States District Court for the Eastern District of Wisconsin, considered the question of whether the services to be rendered are "such as pertain to the contemplated bankruptcy, or may they be general professional services rendered by an adviser in any of the several capacities specified?" i. e., attorney, counselor, solicitor in equity, or proctor in admiralty. Discussing Pratt v. Bothe, supra, and In re Habegger, supra, he holds with this court that section 60d applies only to such services as are germane to the purposes of the act and does not cover general services.

But in none of these cases was the question one of jurisdiction. The crux of the controversy in each case was not whether the fee was reviewable but whether it was allowable. In each of these instances the attorney submitted his case to the court upon the merits, and these expressions were in determining how far he was entitled to the protection of section 60d. Were Mitschrich here submitting his case and asking the court to declare how far his fee was allowable, instead of resisting jurisdiction, the cases last quoted would be instructive. But this is not the situation.

Reiterating, the present question is whether or not his contract with English was made in contemplation of bankruptcy proceedings so as to make this a matter of summary jurisdiction within the case of Wood & Henderson. We are unable so to hold, and accordingly affirm the judgment of the trial court.