**In re Robert E. NEWTON, Debtor.**

No. 01–42866–S.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

April 25, 2003.

John J. Durkay, Mehaffy & Weber, Beaumont, TX, for Robert E. Barron, P.C.

Greg Arnove, Plano, TX, for Janna Countryman, Chapter 13 Trustee.

## MEMORANDUM OPINION

### DONALD R. SHARP, Chief Judge.

Now before the Court for consideration is the matter of disgorgement of attorney's fees in connection with the Trustee's objection to the Debtor's Chapter 13 plan of reorganization in the bankruptcy case of Robert E. Newton ("Debtor"). This opinion constitutes the Court's findings of fact and conclusions of law required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

The Debtor initiated this bankruptcy proceeding by filing a petition for relief under Chapter 13 of Title 11 of the U.S.Code in January, 2001. In response to the Debtor's First Amended Plan of Reorganization, Janna Countryman, the Standing Chapter 13 Trustee, filed the Trustee's Report of Confirmation objecting to the proposed plan on several grounds and a Brief In Opposition To Debtor's Chapter 13 Plan. While such matter was pending, the Trustee filed an Objection to the Debtor's Attorney's Fees and, following appropriate notice, an Order Disallowing Debtor's Attorney's Fees was entered by default on May 24, 2002. The order disallows the fees and orders the Debtor's attorney to "disgorge any fees or compensation received for services rendered in contemplation of or in connection with this case." The confirmation matter came on for hearing in the regular course of the Court's docket and the Plan of Reorganization was confirmed. The Trustee and Barron vigorously disagreed as to whether Barron has completely or partially disgorged fees in compliance with the May 24, 2002 order and that issue was taken under advisement following a trial on the merits.

## DISCUSSION

This is the Debtor's second bankruptcy case filed with the assistance of the attorney for the Debtor, Robert E. "Bob" Barron, Esq., of Robert E. Barron, P.C. (hereinafter, referred to jointly as: "Barron"). The Debtor's first case, filed in January, 2001, was dismissed. In connection with the first bankruptcy case, the Debtor paid Barron $500.00 in cash and agreed to pay an additional $1,500.00. It was anticipated that the $1,500.00 would be paid through the plan. It was not paid through the plan, however, because the case was dismissed.

In preparing to file the second bankruptcy case, according to the uncontroverted testimony of Barron and of the Debtor, Barron received a check from the Debtor for $1,585.00 five days prior to the date of the filing of the petition in this case. The amount consisted of $185.00, representing the filing fee, $400.00 pre-payment of attorneys fees and the amount of $1,000 in settlement of the $1,500 outstanding fees

due to Barron from the prior bankruptcy.[1, 2] Further, the Debtor agreed to pay Barron an additional $1,500.00 through the plan of reorganization for Barron's services in this case. Also, the Debtor signed a retainer agreement detailing the services to be covered by the base fee. Barron testified that he requires all of his debtor clients to execute such an agreement.

In accordance with the terms of the Barron retainer agreement, Barron charged this Debtor the additional sums of $250.00 in September, 2001 and $350.00 in February, 2002 to defend the Debtor in creditors' actions to lift the automatic stay against him. Whether Barron properly disclosed to the Court his receipt of the additional compensation was but one issue upon which the parties disagreed. In the September stay matter, Barron's Disclosure Statement was attached to his Response behind the proposed order and filed with the Court but not separately docketed. In the latter stay matter, Barron filed a separate, supplemental disclosure statement. As to those sums, the issue was mooted by Barron's disgorgement of them to the Trustee.

■ The Trustee argues that Barron failed to properly disclose all compensation received and such failure is grounds for reduction or denial of any fee award.[3] Given that the Trustee characterizes the unapproved post-petition payments as diverted disposable income, she opines that if Barron is required to disgorge fees, the disgorged funds would revert to the estate. As a result, the plan would no longer meet the standard of § 1325(b)(1)(B) regarding dedication of all disposable income to the plan for three years. The § 1325(b)(1)(B) issue was not ripe as to the contested fees on the date of the confirmation hearing. Moreover, the Court is disinclined to create a precedent of withholding a good faith Debtor's confirmation order pending resolution of a dispute over attorney conduct for which the debtor bears neither blame nor influence.

At the hearing, Barron voluntarily presented the Trustee with a check in the amount of $1,000 covering the initial $400.00 retainer and the two fees collected for representing the Debtor in the motions to lift stay. Barron argued that these were the only amounts disallowed by this Court's default order of May 24, 2002. At the trial, the Trustee, however, contended that the proper amount to be disgorged should be $2,000.00 (or an additional $1,000 over the amount tendered at the confirmation hearing). The $2,000.00 figure comprises the $1,000.00 unpaid fee for the first case in addition to the $400.00 initial retainer payment in the second case, the $250.00 post petition fee and the $350.00 postpetition fee. While Barron remitted $1,000.00 to the Trustee in connection with

**1.** Mr. Barron and Mr. Newton testified that the $400.00 retainer amount was disclosed erroneously in Barron's Rule 2016 disclosure statement as $500.00.

**2.** The Court will set aside for the moment, the issues of conflict of interest, preferential transfer and the blatant ethical imprudence—even impudence—of accepting representation of a debtor in a case in which one is a creditor.

**3.** This Court agrees that, "[a]nything less than the full measure of disclosure leaves counsel at risk that all compensation may be denied." *In re Futuronics Corp.*, 655 F.2d 463 (2d Cir. 1981); *cert. denied*, 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *In re Arlan's Dept. Stores, Inc.*, 615 F.2d 925 (2nd Cir. 1979). *In re Film Ventures International, Inc.*, 75 B.R. 250, 252 (9th Cir. BAP 1987); *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 759 (Bankr.N.D.Tex.1988); *In re Devers*, 33 B.R. 793, 799 (D.D.C.1983); *In re Kero–Sun, Inc.*, 58 B.R. 770, 778 (Bankr. Conn.1986); *In re Meyer*, 50 B.R. 3, 4 (Bankr. S.D.Fla.1985); *In re Hawaii General Corp.*, 35 B.R. 789, 792 (Bankr.D.Hawai'i 1983).

the second case, he maintained his position that the $1,000.00 paid five days prior to this filing was in connection with the first case, and therefore not subject to disgorgement pursuant to the May 24, 2002 order.

The testimony indicates that the controversial $1,000.00 was paid to Barron by the Debtor five days prior to the filing of this bankruptcy case. The Trustee argues that such funds were fees paid "in contemplation of" the filing of the petition or "in connection with the case" as contemplated under 11 U.S.C. § 329 and Rules 2016(a) and 2017(a) of the Federal Rules of Bankruptcy Procedure. Barron contends that such amount was not paid "in contemplation of" the filing of the petition in this case or in connection with such case, notwithstanding his own testimony that he would not have filed the second case but for receiving the unpaid fee in the first case. Rather, Barron believes that by receipt of such payment in settlement of the debt, he resolved any conflict of interest as a creditor from the prior case. Barron also contends that he did not have a duty to disclose his receipt of that payment in this case either on his Rule 2016 disclosure statement or in the Debtor's schedules. The basis for the latter argument is that it was not a fee in this case and Barron had already complied with the disclosure requirements by disclosing that fee on the Rule 2016(b) disclosure statement filed in the Debtor's first bankruptcy. (His statement was not controverted.) Barron averred that to have disclosed the fee in the second case might have created a misconception to the effect that such sum had been received twice. In short, Barron claims the $1,000 sum was not paid in contemplation of or in connection with the filing of this bankruptcy proceeding.

The heart of the issue before the Court is the nature of the $1,000.00 although counsel's argument at the hearing and in the briefs focused upon the interpretation of the language "in contemplation of" in the 11 U.S.C.A. § 329 and Bankruptcy Rules 2016 and 2017.

Under 11 U.S.C.A. § 329 entitled: "Debtor's transactions with attorneys"—sets forth the following requirement:

(a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

(2) the entity that made such payment.

*11 U.S.C.A. § 329.*

In addition, under Federal Rule of Bankruptcy Procedure 2017(a), entitled "Payment or transfer to attorney before order for relief":

On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made

directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive. *F.R.B.P. Rule 2017(a).*[4] The language of Bankruptcy Rule 2017 mirrors the language of Bankruptcy Rule 2016 requiring a statement of payments for services rendered "in connection with the case." *F.R.B.P. Rule 2016(a).*

■ The language at issue predates the Bankruptcy Code. It is derived from § 60d of the Bankruptcy Act of 1898 which provided:

> If a debtor shall, directly or indirectly, *in contemplation of the filing of a petition* by or against him, pay money or transfer property to an attorney and counselor at law, solicitor in equity, or proctor in admiralty for services to be rendered, the transaction shall be reexamined by the court on the petition of the trustee or any creditor, and shall only be held valid to the extent of a reasonable amount to be determined by the court, and the excess may be recovered by the trustee for the benefit of the estate.

Act July 1, 1898, c. 541, 30 Stat. at L. 562 (U.S.Comp.St.1901, p. 3446) [emphasis added here]. See, *In re Wood,* 210 U.S. 246, 250, 28 S.Ct. 621, 623, 52 L.Ed. 1046 in which a trustee in bankruptcy sought reexamination of a debtor's attorney's fee.[5]

As early as January 1914, the Eighth Circuit was called upon to address the identical issue before this Court. In *Tripp v. Mitschrich,* the Eighth Circuit Court of Appeals ruled on whether an involuntary debtor, who prior to the petition being filed against him by creditors, entered into a contingency agreement with an attorney to represent him in collecting the fire insurance on destroyed stock, was acting in contemplation of the filing of a bankruptcy petition by or against him. The Court focused upon the meaning of the identical phrase now before this Court:

> .... The words 'in contemplation of the filing of a petition by or against him' do not mean simply the consciousness by the debtor of a financial condition enabling him to file, or subjecting him to, such a petition, but such must have been of influence in the transfer of property or money which is being questioned under this section. There must be some relation, of cause and effect, between the knowledge of his condition and the transaction with the attorney.

> Whether, in making the transfer to the attorney, a purpose germane to the question of bankruptcy proceedings existed is to be ascertained either by direct testimony as to what the debtor said in making the transfer, or, in the absence of these, by the circumstances surrounding the transfer and, among other circumstances, the character of the services contracted for.

---

**4.** *Federal Rule of Bankruptcy Procedure 2017(b),* entitled "Payment or transfer to attorney after order for relief" follows and provides:

> On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under

the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

**5.** The Dissenting Opinion notes that § 60d was not in the bankruptcy act of 1867 [14 Stat. at L. 517, chap. 176] but was inserted into the 1898 Act. *In re Wood, Supra* at 264, 28 S.Ct. 621.

*Tripp v. Mitschrich,* 211 F. 424 (8th Cir. 1914). On the facts of that case, the Court ruled the fee in question was not promised in contemplation of the filing. A New York District Court examining this issue focused on the fact that the court must examine the *debtor's* impetus or state of mind rather than the attorney's in determining whether a payment was made "in contemplation of" filing. "It is clear, and I believe it is without dispute, that the words 'in contemplation of the filing of a petition by or against him,' contained in section 60d of the Bankruptcy Act (11 USCA § 96(d)), relate only to the state of mind of the debtor, and not to what his lawyer thinks about." *In re David Bell Scarves, Inc.,* 52 F.2d 755, 755 (S.D.N.Y.1931) *citing to Tripp v. Mitschrich* (8th Cir.1914) 211 F. 424, 427; *Quinn v. Union Nat. Bank* (8th Cir.1929), 32 F.2d 762, 767. That ruling was affirmed on appeal and affirmed by *Conrad, Rubin & Lesser v. Pender,* 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327[6] 703, 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (U.S.N.Y. May 29, 1933). The controlling question is the state of mind of the debtor, i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding. *In re Dixon,* 143 B.R. 671, 676 (Bankr. N.D.Tex.1992) citing to *Conrad, Rubin & Lesser v. Pender,* 289 U.S. 472, 53 S.Ct. 703, 77 L.Ed. 1327 (1933) and to *2 Collier*

*on Bankruptcy* ¶ 329.03 at p. 329–14 (15th ed.1991).

Recently, the Bankruptcy Court in the Eastern District of Texas, Tyler Division reiterated and relied upon the standards enunciated by both the *Conrad* Court under the Bankruptcy Act and the *Dixon* Court under the Bankruptcy Code in the case of *In re Mayeaux,* 269 B.R. 614 (Bankr.E.D.Tex.2001). The Tyler Bankruptcy Court examined the language "in contemplation of" and "in connection with" respecting disclosure of pre-bankruptcy planning or prevention. ["A fee payment is made 'in contemplation of' a bankruptcy case if the underlying professional services were rendered at a time when the debtor was contemplating bankruptcy." This subjective test is based upon the state of mind of the debtor, "i.e., whether, in making the transfer, the debtor is influenced by the possibility or imminence of a bankruptcy proceeding." *In re Mayeaux, Ibid.* at 622 *citing to Wootton v. Ravkind* (In re Dixon), 143 B.R. 671, 675, n. 3 (Bankr. N.D.Tex.1992).]

 The *Mayeaux* Court found that the fees at issue (six weeks pre-petition but also some post petition fees) were "in contemplation of" and "in connection with" the *Mayeaux* bankruptcy case and that the debtor's attorney had a duty to disclose them to the Court.[7]

---

**6.** Construing the term "in contemplation" in general, the Supreme Court stated that one is usually very much in contemplation of the very result he wants to avoid, and when engages services of an attorney to accomplish this goal, is making payments in "contemplation". This was precisely the factual scenario in Conrad, Rubin & Lesser, supra, where the attorneys were hired for the purpose of negotiating a settlement with creditors of a 50% cash settlement *In re GIC Government Securities, Inc.,* 92 B.R. 525, 530 (Bankr.M.D.Fla. 1988) See also, *In re Prudhomme,* 152 B.R. 91, 103 (Bankr.W.D.La.1993) *aff'd sub nom.*

*Arens v. Boughton,* 176 B.R. 781 (W.D.La. 1993), aff'd, 43 F.3d 1000 (5th Cir.1995).

**7.** "The phrase may include services related to the precipitating cause of the bankruptcy, or services which are inextricably intertwined with the bankruptcy." *In re Keller Fin. Servs. of Fla.,* 248 B.R. at 879. *See also In re Hargis,* 148 B.R. 19, 21 (Bankr.N.D.Tex.1991) (holding in the Chapter 11 context that services by an attorney which enhance, preserve, litigate, or discharge liabilities, or which affect assets of the debtor are services in connection with the case). The phrase is not so broad, however, that it includes every service

■ The Court, thus being charged with ascertaining the state of mind of the Debtor, Mr. Newton, with respect to his payment of the check for $1,585.00 to Barron, truly and minutely scrutinized the testimony adduced at the hearing. The Court finds the testimonial evidence, consistent, clear and conclusive that the payment of the amount of $1,000.00 at issue was not a payment within the scope of 11 U.S.C. § 329. The payment was not for services rendered or to be rendered in connection with the filing of this bankruptcy. The testimony was consistent from both witnesses, Barron and Newton, that the payment of the $1,000.00 at issue was settlement of the $1,500.00 unpaid fees remaining from the prior bankruptcy case. It was a payment on a debt. No evidence controverts their testimony. Therefore, the Court concludes that such payment was payment for a debt antecedent to the filing of the petition initiating this bankruptcy case rather than a payment of fees or compensation required to be disclosed in this bankruptcy case under § 329, Bankruptcy Rule 2017(a) or Bankruptcy Rule 2016(a).[8]

The sum at issue is comparable to the fees promised by the debtor, Mr. Edwards, to his counsel Mr. Mitschrich, for representation in an insurance dispute in that it was necessary and proper to pay it in the ordinary course of business regardless of whether the bankruptcy was to intervene. *Tripp v. Mitschrich, Supra* at 424. Had the sum been paid to Mr. Barron as a fee

for representation in, for example, a divorce, probate or criminal proceeding, the disgorgement issue would not have arisen in the current posture. Had the payment been for legal representation in the prior dismissed proceeding, but paid to a bankruptcy attorney other than Mr. Barron, the disgorgement issue would not have arisen in the current posture. For the foregoing reasons, the Court is of the opinion that the $1,000.00 sum paid in the case at bar is, in fact, distinguishable from the fees paid to counsel in the case *In re Mayeaux,* relied upon by the Chapter 13 Trustee. In *Mayeaux,* the fees paid were compensation for negotiations to prevent bankruptcy and thus the services rendered were a portion of the identical legal scheme as the bankruptcy.

Regardless of the serious issues of whether Barron's election to represent the Debtor was prudent or ethical, regardless of whether such payment bears indicia of extortion, regardless of whether such payment should have been disclosed on the Debtor's Statement of Financial Affairs in response to Questions 3 and/or 9, which would have raised the issue of whether it was voidable as a preference under 11 U.S.C. § 547(b) (an issue not properly before the Court at this juncture), the result of the Court's determination that the sum of $1,000.00 was not compensation relieves Barron from the obligation to disclose it under Fed.R.Bankr.P.2016(a) and any duties arising under § 329. Insofar as

---

rendered to a person who is a debtor. *See for example, In re Swartout,* 20 B.R. 102 (Bankr. S.D.Ohio 1982) (determining that services related to a debtor's divorce proceeding were not connected to the bankruptcy case within the meaning of § 329).

*In re Campbell,* 259 B.R. 615, 626 (Bankr. N.D.Ohio 2001).

**8.** The Court makes this statement noting that the issue of nondisclosure is *res judicata* here.

The Court has already ruled that Mr. Barron failed to properly disclose certain fees in this case and ordered disgorgement of any fees in this case for such failure. The purpose of this opinion is to determine whether the amount required to be disgorged under the May 15, 2002 Order includes the $1,000.00 portion of the payment received by Barron five days prior to filing.

Federal Rule of Bankruptcy Procedure 2017(a) deals with "any payment" and "any transfer" without limiting such payment to "compensation", the Trustee's argument must still fail, because Rule 2017 restricts its scope to payments "for services rendered or to be rendered" excluding debt for services in prior proceedings. The Court here elects to construe Rule 2017 very narrowly because to interpret it to include payment for "services rendered in prior or other proceedings" [thus adding language to this rule or "torturing" its construction] would render the provisions of 11 U.S.C. § 547 redundant. The Courts "are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998) citing to *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988). See also, *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 256, 112 S.Ct. 1146, 1151, 117 L.Ed.2d 391 (1992) [[on giving effect to § 1291 and § 158(d)] ... "we do strive to interpret statutes so as to avoid redundancy". *Concurring opinion of O'Connor, J. White, J. and Blackmun, J.*].

## CONCLUSION

For the foregoing reasons, the Standing Chapter 13 Trustee's motion at the hearing on confirmation seeking disgorgement of the $1,000.00 amount as a fee paid for services rendered in connection with this bankruptcy proceeding must be denied. An order will be entered accordingly.