**DISSENT; Opinion Filed August 20, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00050-CV**

**WINSTEAD PC, Appellant**
**V.**
**DEWEY M. MOORE, JR., Appellee**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-15858**

## DISSENTING OPINION

Opinion by Justice Schenck

While I agree with the majority that the TCPA applies to Moore's legal-malpractice and equitable-indemnification claims, I do not agree with the majority's conclusion that the TCPA does not apply to Moore's negligent-misrepresentation claim, and I do not agree with the majority's decision to remand the remaining claims to the trial court for a legal determination we would review de novo. For the following reasons, I dissent.

## I. Moore's Negligent-Misrepresentation Claim Alleges Communications "in Connection with" an Issue Under Consideration or Review by a Governmental Body.

As a Chapter 27 movant, Winstead had the initial burden of showing by a preponderance of the evidence that the legal action is based on or is in response to the party's exercise of the right of free speech, the right to petition, or the right of association. *See* TEX. CIV. PRAC. & REM. CODE § 27.005(b). I begin with the TCPA's definition of the "[e]xercise of the right to petition" and whether Winstead showed the statements alleged in Moore's petition met that definition, as that definition appears to be the sole dispositive point of disagreement in addressing Winstead's first issue. *See id.* § 27.001(4).

The TCPA defines the "[e]xercise of the right to petition" as including "a communication *in connection with* an issue under consideration or review by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding" or as "a communication that is reasonably likely to encourage consideration or review of an issue by a legislative, executive, judicial, or other governmental body or in another governmental or official proceeding." *See id.* § 27.001(4)(B),(C) (emphasis added). Winstead argues both definitions apply to Moore's claims for negligent misrepresentation. I agree at least as far as sub-paragraph (B) and thus will pretermit discussion of sub-paragraph (C).

As noted by the majority and according to Moore's petition, Moore's negligent-misrepresentation claim alleges numerous misrepresentations by

Winstead, including "representations to Plaintiff . . . that it had met its legal standard of care" and representations that "supplied false information for the guidance of [Plaintiff] in his business transactions." The majority does not appear to contest that those alleged statements are "communications" as required for application of the TCPA. Because I find that conclusion to be implied by its reasoning and, in all events, obvious,[1] I will move on to address my first point of contention, which is the majority's conclusion that Winstead's statements to Moore were "too remote" from the SEC's review of the documents prepared by Winstead to constitute exercises of its right to petition under the TCPA.

This Court has previously held the exercise of the right to petition merely requires a communication that "pertains to" governmental or public proceedings. *See BusPatrol Am., LLC v. Am. Traffic Sols., Inc.*, No. 05-18-00920-CV, 2020 WL 1430357, at *8 (Tex. App.—Dallas Mar. 24, 2020, pet. denied) (mem. op.) (citing *Gaskamp v. WSP USA, Inc.*, 596 S.W.3d 457, 474 (Tex. App.—Houston [1st Dist.] 2020, pet. dism'd) (en banc)). No one questions that the securities documents at issue were to be reviewed by a governmental body, the SEC. But, what did this review entail? According to the letter from the SEC that Moore himself attached to

---

[1] In order for a movant to invoke the TCPA, there must first be a communication. *See* CIV. PRAC. & REM. § 27.001(2)–(4) (the rights of association, of free speech, and to petition are defined in the TCPA to include a communication). The TCPA defines "communication" to include "the making or submitting of a statement or document in any form or medium, including oral, visual, written audiovisual, or electronic." *See id.* § 27.001(1). Moore's negligent-misrepresentation claim alleges affirmative misrepresentations to Moore, and, as such, the claim falls within the TCPA's broad definition of "communication." *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018) ("Almost every imaginable form of communication, in any medium, is covered.").

his amended petition, the SEC "conducted examinations . . . which evaluated compliance with certain provisions of the federal securities laws or other applicable rules and regulations."

The majority concludes Winstead's representations to Moore regarding its legal standard of care in assisting its client with the preparation of these same documents for the SEC to review for "compliance" with applicable law are "too remote" to be "in connection with" the issues under consideration and review by the SEC. *See* CIV. PRAC. & REM. § 27.001(4)(B). The majority does not explain why or offer its understanding of what "in connection with" would mean.[2] I cannot see how the majority reaches this conclusion and have not found any relevant authority to support it.

I believe words have meaning. And, where they are used in a statute and form the basis for our decision, we should explain what that meaning is. I understand the phrase "in connection with" to be one of "intentional breadth" that does not imply any material or significant connection although context may indicate otherwise. *Titan Transp., LP v. Combs*, 433 S.W.3d 625, 637 (Tex. App.—Austin 2014, pet. denied); *see also Tarrant Cty. v. Bonner*, 574 S.W.3d 893, 898 (Tex. 2019) (noting "phrase 'in connection with' does not imply a material or significant connection . . . [and is] error to construe the phrase as requiring more than a tangential, tenuous, or

---

[2] Indeed, the majority states that these facts do not meet the statutory language of "in connection with" but does not otherwise provide any guidance of what that phrase means. *Cf.* TEX. R. APP. P. 47.1.

remote relationship") (citing *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900–01 (Tex. 2017)). Indeed, one authority has referred to the phrase as "a vague, loose connective." BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 287 (1st ed. 1987). Thus, as I see it, the phrase "in connection with" as used in the Texas Citizens Participation Act is an effective synonym of "relates to." In all events, I believe it would be error to construe the phrase as requiring something more than a tangential, tenuous, or remote relationship between the connected items, as the majority does. *See Bonner*, 574 S.W.3d at 898.

I find further support for my view for how to interpret "in connection with" in the TCPA from a sister court of appeals and federal courts. In *Enterprise Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 295 (Tex. App.—Houston [14th Dist.] 2020, no pet.), the court considered the appellant's alleged false representations and promises regarding research of the applicable requirements to obtain a permit that were made in the course of the permit–application process. The court concluded these alleged representations and promises were made "in connection with an issue under consideration or review by a . . . governmental body." *See id.*

Meanwhile, the Fifth Circuit and other federal courts, in the context of multiple statutes, have defined the phrase "in connection with" to mean "related to." *See, e.g.*, *Conn. Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 255 (5th Cir. 2002); *In re Newton*, 292 B.R. 563, 568 n.7 (Bankr. E.D. Tex. 2003). Similarly, here, I would conclude Winstead's statements regarding whether it had met its legal

standard of care in preparing the same securities documents it forwarded to the SEC would be material to the SEC's review of those same securities documents for legal compliance.  Otherwise, the submission would have been pointless.

In any event, I would conclude Moore's claims allege that Winstead made communications "in connection with" issues under consideration and review by a governmental body and thus the alleged statements meet the definition of exercise of right to petition.  *See* CIV. PRAC. & REM. § 27.001(4)(B).

Having concluded Winstead showed Moore's claims allege communications that constitute an exercise of Winstead's right to petition, I now address whether Winstead met the rest of its burden under the first step of the TCPA to show that Moore's legal action is "based on or is in response to" Winstead's exercise of the right of petition.  *See id.* §§ 27.003(a), 27.005(b).

Moore himself alleges that because of representations Winstead made, the SEC found the PPM and Offering Circular contained material misstatements.[3]  And, as I noted above, the SEC's letter documenting those findings stated its review of the submitted securities documents was for compliance with applicable laws and regulations.   Indeed, Moore's alleged damages trace directly to the alleged

---

[3] Attached to Moore's petition was a copy of the SEC's letter containing its examination findings and the statement: "The examination disclosed that the Offering Memoranda contained material misstatements . . . ."

inadequacy of the securities documents submitted for SEC review.[4]  Therefore, the alleged communications proximately caused Moore's damages, and thus I would conclude his claims are "based on" these miscommunications.  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 49 (2007) ("In common talk, 'based on' indicates a but-for causal relationship and thus a necessary logical condition.").

For the reasons stated above, I dissent from the majority's decision to overrule Winstead's first issue as to Moore's negligent-misrepresentation claim and would instead conclude Winstead met its initial burden to show all of Moore's claims were based on Winstead's exercise of its right to petition.

## II.    The Second Step of the TCPA Analysis Requires a Legal Conclusion that We May Reach Without Remanding to the Trial Court.

In its second issue, Winstead argues Moore failed to meet his burden to establish by clear and specific evidence a prima-facie case for each essential element of his causes of action.  Moore responds, "[T]he record demonstrates that Moore presented clear and specific evidence for each element of [his] claims."  The majority relies on a prior panel opinion of this Court to conclude remand is appropriate.  I would conclude otherwise relying on the authority cited herein.

The trial court's order denying Winstead's motion to dismiss expressly stated, "As the Court has ruled on the applicability of the TCPA, it does not reach . . . the

---

[4] I cannot help but question the effect of the majority's conclusion that these alleged communications are "too remote" from the SEC's review of the securities documents.  For instance, would the trial court then be justified in granting a motion in limine to exclude those same securities documents from consideration of Moore's damages if they are not connected with Moore's claim for damages?

–7–

second step of the TCPA analysis." Rule 43.3 directs this Court to render the judgment the trial court should have entered unless remand for further consideration is "necessary." *See* TEX. R. APP. P. 43.3. Whether an appellate court remands to the trial court for further proceedings depends on the facts and issues presented in each specific case. Thus, in some cases, typically those involving legal issues we would review de novo in any subsequent appeal, this Court has rendered the decision we concluded the trial court should have entered. Therefore, in several TCPA cases, we have resolved the prima-facie case question notwithstanding that the trial court had not addressed the second step of the TCPA analysis. *See, e.g.*, *Better Bus. Bureau of Metro. Dallas, Inc. v. BH DFW, Inc.*, 402 S.W.3d 299, 304, 309 (Tex. App.—Dallas 2013, pet. denied). In other cases, we have remanded. *See, e.g.*, *Dorfman v. Proactive Inventory, Inc.*, No. 05-16-01286-CV, 2017 WL 2953058, at *2 (Tex. App.—Dallas July 11, 2017, no pet.) (mem. op.). Here, I cannot see any facts or issues requiring further consideration by the trial court such that remand would be "necessary." *See Brenner v. Centurion Logistics LLC ex rel. Centurion Pecos Terminal LLC*, No. 05-20-00308-CV, 2020 WL 7332847, at *3 (Tex. App.—Dallas Dec. 14, 2020, no pet. h.) (mem. op.) (de novo appellate standard of review); *see also, e.g.*, *Coleman*, 512 S.W.3d at 902 (reversing and remanding to this Court—not the trial court—for consideration of step two where trial court denied motion to

dismiss "indicating it did not believe chapter 27 applied").[5]  Accordingly, I would reach Winstead's second issue and address it as follows.

### III.  Moore Failed to Establish a Prima-Facie Case for His Claims.

Once a TCPA movant satisfies step one, the burden shifts to the nonmovant to establish by clear and specific evidence a prima-facie case for each essential element of the claim in question.  CIV. PRAC. & REM. § 27.005(c).  "Clear" means unambiguous, sure, or free from doubt.  *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).  "Specific" means explicit or relating to a particular named thing.  *Id.*  A prima-facie case is the minimum amount of evidence necessary to support a rational inference that a fact is true.  *Id.*

Bare, baseless opinions do not meet the clear and specific evidence requirement.  *In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (orig. proceeding).  Similarly, conclusory statements are not probative and will not suffice to establish a primafacie case.  *Dobrott v. Jevin, Inc.*, No. 05-17-01472-CV, 2018 WL 6273411, at *6 (Tex. App.—Dallas Nov. 30, 2018, no pet.) (mem. op.).

Moore's petition alleges claims against Winstead for legal malpractice, negligent misrepresentation, and equitable indemnification.  Moore alleges he

---

[5] To the extent the majority might argue any inconsistency between our prior panel decisions exists, the former panel opinion controls under the rule of orderliness.  *See MobileVision Imaging Servs., L.L.C. v. LifeCare Hosps. of N. Tex., L.P.*, 260 S.W.3d 561, 566 (Tex. App.—Dallas 2008, no pet.) ("We may not overrule a prior panel decision of this Court absent an intervening change in the law by the legislature, a higher court, or this Court sitting en banc.").  And, of course, I have no doubt the Texas Supreme Court has the power to take up this case to resolve any inconsistencies among this Court's opinions or failures to adhere to the supreme court's prior holdings.  *See, e.g.*, *Bonner*, 574 S.W.3d at 898; *Coleman*, 512 S.W.3d at 900–01.

retained Winstead to represent both IWH and himself personally for the securities offerings and that Winstead owed a duty of care to him "due to their 20-year ongoing attorney–client relationship" and that he justifiably relied on Winstead's representations.

A legal-malpractice claim requires evidence the defendant owes a duty to the plaintiff. *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004) (elements of legal-malpractice claim include plaintiff's showing "the attorney owed the plaintiff a duty"). The attorney–client relationship is a principally contractual one that arises from a lawyer's agreement to render professional services to a client.[6] *See Kiger v. Balestri*, 376 S.W.3d 287, 290–91 (Tex. App.—Dallas 2012, pet. denied). We have held there must be evidence *both* parties intended to create an attorney–client relationship and that one party's subjective belief is insufficient to raise a question of fact. *See id.* at 291. Moreover, representation of a corporation does not by itself create privity—or representation—between the attorney and the corporation's officers, directors, or shareholders. *See Pennington v. Fields*, No. 05-17-00321-CV, 2018 WL 3989537, at *5 (Tex. App.—Dallas Aug. 21, 2018, no pet.) (mem. op.).

---

[6] In the context of determining whether communications are privileged, communications with counsel made in the course of preliminary discussions with a view to employing the lawyer are privileged. *See* TEX. R. EVID. 503(a)(1) (evidentiary rule titled "Lawyer–Client Privilege" defining "client" as "a person . . . who consults with a lawyer with a view to obtaining professional legal services from that lawyer.").

The engagement letter was addressed to Moore as "Dear Rusty" and was signed by Moore without indicating any representative capacity. However, the subject–line of the letter reads:

Engagement of Winstead PC (the "Firm") by Institute for Wealth Holdings, Inc. ("You" or "you")

The first sentence of the letter defines "Matter" to be the Firm's representation of "you in connection with (a) a private placement of a to-be-created class of preferred securities to accredited investors, and (b) a Tier II Regulation A+ offering of preferred securities." The letter also provides, "The person or party whom we represent in the Matter is limited to the person or party specifically identified above and does not include an affiliates or other persons or parties." The letter further limits the scope of Winstead's representation to the "Matter" but allows for amendment via written request and response. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483 (Tex. 2019) (parol-evidence rule bars consideration of evidence contradicting, varying, or adding to terms of unambiguous written agreement). Therefore, I would conclude the letter does not provide clear and specific evidence of an attorney–client relationship between Winstead and Moore individually and personally. *See Elliott*, 564 S.W.3d at 847.

Although the engagement letter allows for amendment via written request and response, no such written request or response exists in the record. Instead, Moore attempts to rely on an exchange of emails, which he attached to his affidavit and which he argues demonstrate clear and specific evidence of Winstead's personal

–11–

representation of him. However, none of these emails proposes—much less requests and responds with acceptance of—a representation of Moore in his personal capacity. Instead, these emails simply discuss the role Moore has with IWH's placement agent and what actions Moore would be permitted to take in the securities offerings.[7] Again, Moore's attempts to create a fact question to the contrary would be barred by the parol-evidence rule. *See Barrow-Shaver Res. Co.*, 590 S.W.3d at 483; *see also* TEX. R. EVID. 1002 (best evidence rule requires original writing to prove content).

Moore relies on his affidavit in which he describes the twenty years of earlier representations Winstead provided to him both personally and professionally before and during the events at issue here.[8] In that affidavit, Moore states, "No one at

---

[7] For example, in an email dated February 13, 2018, Williams stated that "we will need to remove the paragraph re Rusty being a registered representative . . . ." In an email dated February 14, 2018, the placement agent's CEO stated that it's "[c]lear [FINRA] do[es]n't know precisely what Rusty can or cannot do." Williams responded, "[W]hat we really need to focus on is what would [Moore] be permitted to do or not do." Williams later asked the placement agent's CEO questions about Moore's association with the placement agent in order to advise whether Moore would be permitted to be involved in selling securities in the offerings.

[8] Moore lists the following examples of personal representations:

In 2007, Winstead represented me personally in my Form A hearing in Austin before the Texas Insurance Department related to my approval as a Director of a life insurance company. Winstead also represented me personally in various arbitrations and mediations, as well as in my negotiations related to my employment agreement and individual stock options and grants with Puritan Financial Group. Other Winstead attorneys who performed legal services for me over that 20-year period, in addition to Talmage Boston, included Lori T. Oliphant, Ben Allen, Bruce Cheatham, Henry "Bud" Ehrlich, Alex Gonzales, David Knoll, Jay Madrid, Christopher J. Volkmer, and Christopher Williams, who each in their areas of specialty represented me in various capacities, both individually and with my former companies. In all these years, no one at Winstead ever told me that I needed separate representation for issues that related to me personally. Therefore, I relied on Winstead over these past 20 years to have both my personal and my companies' best interests in mind in their provision of legal services to me.

Winstead ever told me that I could not rely on Winstead to protect my personal legal interests in the legal work they were performing" for IWH or its related entities, and he never had separate legal representation to protect his personal interests. Additionally, Moore opines, "Because the majority of my personal net worth and life savings were invested in IWH, Winstead, and Christopher Williams knew or should have known my personal and financial interest were almost completely aligned with IWH as it related to their representation." However, I would conclude these statements amount to no more than Moore's subjective belief that Winstead owed him a professional duty and represented him personally in the 2017 and 2018 Offerings and are by no means clear and specific evidence of an attorney–client relationship between Winstead and Moore individually and personally in connection with the firm's work in this matter, particularly when viewed in light of the controlling, written terms of the engagement. *See Elliott*, 564 S.W.3d at 847; *Kiger*, 376 S.W.3d at 290–91.

It is also significant that none of the damages Moore alleges in his petition are related to his *personal liability* for noncompliance with SEC or FINRA regulations. Instead, he alleges Winstead's legal representation led to the material misstatements the SEC found in the PPM and that because of those Moore was required to resign his employment positions. Accordingly, I cannot conclude these emails support the element of legal malpractice that Winstead owes a duty to Moore personally and individually. *See Alexander*, 146 S.W.3d at 117.

As for Moore's claim of negligent misrepresentation, he argues in the alternative that, even if he was not a client of Winstead, Winstead nevertheless owed him a duty of care and he justifiably relied on false information Winstead provided. *See Kastner v. Jenkens & Gilchrist, P.C.*, 231 S.W.3d 571, 577 (Tex. App.—Dallas 2007, no pet.) (elements of negligent misrepresentation include proof plaintiff justifiably relied on false information supplied by defendant). Of course, the "false information" Moore alleges is that Winstead "had met its legal standard of care in preparing said Memoranda and Opinion Letter." Moore contends that an email from Williams stating he did not have a copy of the final PPM demonstrated Winstead failed to review the final version of the PPM before it was sent to the SEC. However, what that email actually states is, "if someone can send us a final copy of the PPM which ***is going to be sent to the SEC***, we would appreciate it." (Emphasis added). Thus, that email is neither "clear" nor "specific" evidence that Winstead failed to meet its legal standard of care to anyone, much less Moore. Nor does the remaining record contain any clear and specific evidence that Winstead did not meet its legal standard of care. Accordingly, I would sustain Winstead's second issue.[9]

---

[9] Moore's equitable-indemnification claim is derivative of his other two claims, seeking "equitable indemnification from Winstead for any losses he may incur from future lawsuits as a result of Winstead's breach of its duty to Plaintiff." *See Equitable Recovery, L.P. v. Heath Ins. Brokers of Tex., L.P.*, 235 S.W.3d 376, 387 (Tex. App.—Dallas 2007, pet. dism'd); *cf. Gunn v. McCoy*, 554 S.W.3d 645, 677–78 (Tex. 2018). Thus his failure to satisfy his burden as to those two claims necessarily means he cannot meet his burden as to his claim for equitable indemnification. *See Equitable Recovery*, 235 S.W.3d at 387.

Because I would conclude Moore did not meet his burden to produce clear and specific evidence sufficient to establish a prima-facie case regarding his legal-malpractice and negligent-misrepresentation claims, I do not address Winstead's third issue in which it argues it established the affirmative defense of attorney immunity. *See* TEX. R. APP. P. 47.1.

## CONCLUSION

Because I cannot join the majority's judgment affirming the trial court's judgment as to Moore's negligent-misrepresentation claim and remanding his legal-malpractice and equitable-indemnification claims to the trial court for further consideration of a legal conclusion we would review de novo on appeal, I dissent.

/David J. Schenck/

DAVID J. SCHENCK
JUSTICE

200050DF.P05

–15–